## WYATT v. WILLIAMS.

An action by the wife will not lie to recover damages for the killing of the husband, whether caused by a felonious act or by negligence.

THIS was case brought by Martha A. Wyatt, to recover damages for the loss of the services, &c., of her late husband, Vanness Wyatt, alleged to have been unlawfully killed by the defendant. The plaintiff's declaration is as follows :

⁂ In a plea of the case, for that whereas, heretofore, to wit, on the 27th day of July, 1860, at said Warren, the plaintiff was and for a long time had been the lawful wife of one Vanness Wyatt, and as such was then and there lawfully and rightfully entitled to receive and enjoy out of the labors and earnings of said Vanness Wyatt, her maintenance and support, according to his position in life, for and during his life, and till death should ensue from natural and lawful causes, unless the said plaintiff should earlier decease, then for and during her life : and whereas, the said plaintiff was also entitled to

receive and enjoy, for the time aforesaid, the comfort, fellowship, and society, of said Vanness Wyatt, as her husband in her domestic affairs, and the said plaintiff as the wife of said Wyatt, was then and there receiving and enjoying, according to her lawful right as aforesaid, her maintenance and support as aforesaid, as also the comfort and fellowship and society as aforesaid, as she had the lawful right to do ; when, on the day and year, and at the place last aforesaid, the said defendant, contriving, and unlawfully, wickedly, and unjustly intending to injure the said plaintiff, and to deprive her of her maintenance, support, comfort, fellowship, and society, which she was then rightfully enjoying and was entitled to enjoy for the period aforesaid, through the said Vanness Wyatt, her husband as aforesaid ; did fraudulently, wickedly, and unjustly, with a pistol, then and there held in his right hand, loaded with gunpowder and a leaden ball, shoot, penetrate, and wound the said Vanness Wyatt, husband of the said plaintiff as aforesaid, with the leaden ball aforesaid, shot, by force of the gunpowder aforesaid, out of the pistol aforesaid, by him, the said defendant ; insomuch that the said Vanness Wyatt, her husband, then and there, the same day, died ; whereby the said plaintiff lost and was deprived of her maintenance, support, comfort, fellowship, and society as aforesaid of the said Vanness Wyatt, her husband, which she ought to have had and otherwise would have had, from the day and year aforesaid to the day of the date of this writ, and for a long time to come, to wit, fifty years ; to wit, at Warren aforesaid, to the damage of said plaintiff, as she says, the sum of $10,000.

There was another count, differing slightly in form, but in substance the same ; and the questions came before the court on demurrer to the declaration.

*T. J. Smith*, with whom were *Woods & Bingham*, for the plaintiff.

It may be true that the authorities of the common law are divided or adverse, even, to this action ; but we think it equally true that the principles of the law, as well as those of natural justice, would sustain it ; for that there should be a remedy for every wrong is as certainly deducible from the principles of the common law as from those of natural justice ; and that the remedy which the courts furnish is as full and complete as the civil polity of the State will allow, is equally certain. 3 Black. Com. 23. Yet the court could not satisfy the claims of private justice in the case of a felon, so long as forfeiture of his real and personal estate followed his felonious act, and, therefore, refused to the individual a remedy for his private injury, however strongly his claims were pressed, because of the more potent demands of the public. But, with the abrogation of forfeitures, the doctrine that a person injured by the death of another is, by the principles of the common law, remediless, has become a deformity which our more civilized jurisprudence will not willingly tolerate ; and even actions for damages, caused by the death of a person, may be and are sustained by the courts in this country ; *Ford* v. *Monroe*, 20 Wend. 210 ; *James* v. *Christy*, 18 Mis. 162 ; and more, it can not be doubted that the father and

husband may sustain an action for the loss and damage which an injury may inflict upon child or wife, being entitled to their service, assistance, and society. Can there be any reasons, upon the principles of natural justice, why his right of action should be lost, if the injury is multiplied by the death of those nearest objects of his affections? But it is said that the precedents of common law are hostile to this view. We ask, why are they so? and is not the reason removed by the removal of forfeiture? And we confidently submit that the principles of the law will furnish adequate remedies for every violation of the legal right and property of any of its subjects, the more certainly and decisively as they approach the most vital interests of the citizen, and never failing to enter into new combinations and new applications, if need be, for that purpose.

The whole tenor of modern legislation and judicial determination in this department of the law, points toward an equality of right, duties, and liabilities, between husband and wife. She is not the servant merely, but the companion of her husband. While he may demand the fruit of her toil, she is entitled, in turn, to receive, not necessaries for her support alone, but also—always having reference to the pecuniary substance he possesses—the luxuries of life. Indeed, we deem it to be settled law that the wife has a legal right to aid, assistance, and support, from her husband, which right is enforced against his wish, even, and oftentimes against his most persistent opposition. Bish. Mar. & Div., sec. 560, note; 2 Kent's Com. 146; *Rumney* v. *Keyes*, 7 N. H. 571; *Walker* v. *Leighton*, 31 N. H. 111; *Shaw* v. *Thompson*, 16 Pick. 198. Of these rights this plaintiff has been ruthlessly deprived by this defendant. Is she remediless? We see no principles of natural equity or civil law which would deny her a remedy, nor are we able to distinguish this case in principle from that whole class of cases, where the husband, father, or master, suffers loss through the injury of his wife, child, or servant; and in these the remedy is undoubted. 3 Black. Com. 139; 1 Chit. Pl. 73. We can not say that she has no right to the care, society, or assistance of her husband; and having some rights, as we submit, she must have corresponding remedies for their invasion.

*Quincy*, and *Hibbard*, for the defendant.

Nothing is more certain than that, upon the authorities at common law, this action can not be maintained. *Carey* v. *Berkshire Railroad; Skinner* v. *Housatonic Railroad*, 1 Cush. 475; *Connecticut Life Ins. Co.* v. *Railroad*, 25 Conn. 265. These cases were settled by a recognition of the well established principle that, at common law, a party is not liable *civiliter* for the destruction of human life. In both these cases, the authority of *Ford* v. *Monroe*, 20 Wend. 210, cited in the plaintiff's brief, is referred to, but rejected as anomalous. Recently, in England and some of the United States, statutes have been passed creating a liability in certain specific cases, for injuries resulting in death, and conferring a right of action therefor upon the representatives of deceased persons. It is only in jurisdictions where such statutes exist, and by virtue of their provisions, that actions like this have been or can be maintained. *Kearney* v. *Boston & Wor-*

*cester Railroad,* 9 Cush. 108, which involved a question as to the construction of the Massachusetts statute, enacted in 1842, for the purpose above stated, distinctly reaffirms the principle, early laid down in *Baker* v. *Bolton,* 1 Camp. 493, that at common law the death of a human being can not be complained of as an injury to third persons.

We do not understand with the plaintiff that this principle is founded upon the English law of forfeiture of the estates of felons, or has any connection therewith. Some of the many reasons in which it originated are suggested in the case above cited, of *Connecticut Life Ins. Co.* v. *Railroad.* This law of forfeiture has been supposed to be the origin of the common law doctrine that all civil remedies in favor of a party injured by a felony are merged in the felony, or suspended until the termination of a criminal prosecution against the offender. *Boston & Worcester Railroad* v. *Dana,* 1 Gray 83. But in Bish. Cr. Law 335, it is contended, and, we think, upon good grounds, that the doctrine of merger or suspension of the right to civil remedies for felonies, is based, not upon the English law of forfeitures, but upon a purpose to stimulate the injured party to bring the offender to justice. Such was the view of the court in *Bank* v. *Flanders,* 4 N. H. 239. No such action as the present has ever been maintained in this State, nor is it within our knowledge that any such has ever been brought, though the occasion has very frequently happened. It is a strong presumption that that which never has been done can not by law be done at all. *Ashurst,* J., in *Russell* v. *Men of Devon,* 2 T. R. 667. And it may be added here, as was said by *Kenyon,* C. J., in that case, as a reason against sustaining the action, that, if the experiment succeeds, it will be productive of an infinity of suits.

On the general question we also cite *Eden* v. *Lexington & Frankfort Railroad,* 14 B. Mon. 204 ; 3 Conn. 489 ; 27 Barb. 244 ; *Green* v. *N. Y. & C. R. Railroad,* 28 Barb. 9.

BELLOWS, J. This action is for damages sustained by the wife, by reason of the killing of the husband, which is alleged to have been done fraudulently, wickedly, and unjustly, by shooting with a pistol, on the 27th day of July, 1860, of which he died on the same day.

The facts charged being found by demurrer, the question is, will such an action lie in New-Hampshire ? At common law, for the killing of a human being, no civil action could be maintained against the person who caused it, either by the executor of the deceased, or by a person standing in the relation of husband, father, or master, to the person killed, and the law was the same, whether the act which caused the death was felonious or not. *Higgins* v. *Butcher,* Met. Yelv. 89, 90 ; *Smyth* v. *Sykes,* 1 Freem. 224 ; 1 Levinz 247 ; Broom Leg. Max. 563 ; *Baker* v. *Bolton,* 1 Camp. 493 ; *Carey* v. *Berkshire Railroad,* 1 Cush. 475 ; *Connecticut Life Ins. Co.* v. *Railroad,* 25 Conn. 265 ; *Worley* v. *Railroad,* 1 Handy 481 ; *Campbell* v. *Rogers,* Law Rep., October, 1856, 329, Supreme Court, Ohio ; *Eden* v. *Lexington & Frankfort Railroad,* 14 B. Mon. 204 ; *Green* v. *Hudson River Railroad,* 28 Barb. 9, said in note to have been affirmed on appeal

at a general term of the court at Syracuse; *Queen* v. *Moore*, 15 N. Y. 436; *Safford* v. *Drew*, 3 Dan. 637; *Hollenbeck* v. *Berkshire Railroad*, 9 Cush. 480; *Miller* v. *Aubshorn*, 1 S. & R. 31.

On the other hand, we are referred to *Ford* v. *Monroe*, 20 Wend. 210, and *James* v. *Christy*, 18 Mo. 152.

In neither of these cases was the general question considered, and the former case has been distinctly overruled in the New-York cases before cited, upon full consideration. Both were actions on the case for negligence, by reason of which the plaintiff's son and servant was killed, and loss of service ensued; and in the case of *James* v. *Christy*, the principal question was, whether, by the law of Missouri, the action commenced in the lifetime of the father would survive to his executors. Nor does it appear whether the child was instantly killed or not; and there was no discussion by the court of the question whether damages could be recovered for loss of services after the death of the son. These cases, therefore, can not stand against the great weight of authority upon the other side.

There has been, undoubtedly, a disposition of late to provide for a certain class of sufferers by the death of near relations, caused by the wrongful acts of others, and more especially of certain classes of common carriers. But these provisions assume that no remedy already exists at common law, and furnish an argument against any attempt by the courts to trench upon the ancient rule, in advance of legislation.

In some jurisdictions, as in our own by the law of 1850, these provisions apply to railroad corporations alone, and punish the negligence by which the death of a person is caused, by a fine for the benefit of the widow and children, or heirs generally, if there be no widow or children. Such, also, is the law of Massachusetts. By a recent English statute (9 and 10 Vict.) it is provided that when the death of a person is caused by a wrongful act or neglect of another, which, if death had not ensued, would have entitled the person injured to recover damages therefor, then, on the death of such person, his executor or administrator may, by a suit brought within twelve months of such death, recover damages for the injury, for the benefit of the wife, husband, parent, and child of the person so injured. This, it will be perceived, is much like the laws of New-Hampshire and Massachusetts, except in these States the remedy is by indictment, and in England by a civil suit.

The law of Ohio, of March, 1851, is like the English statute, except a limitation of the damages to $5000.

These, together with similar provisions in other States, by necessary implication, exclude the idea of existing common law remedies; and it would be a stretch of judicial power to adopt the views urged by the plaintiff's counsel in his ingenious argument, for which we find no authority whatever.

It will be observed, however, that the rule established by the authorities cited, is confined in its application to damages caused by the wrongful killing of another, and does not preclude a recovery for injuries to relative rights, by wrongful acts, which, in the end, might terminate in death, but not instantaneously. On the

contrary, it is held that, when the death is not immediate upon the act complained of, but the party lingers along for some time, during which the father, master, or husband is subjected to the loss of services and expenses, he may recover damages therefor, although death may at last ensue. But in such case no damages can be awarded for such loss of services accruing after the death.

Such is the doctrine of *Baker* v. *Bolton*, 1 Camp. 193; *Eden* v. *Lexington & Frankfort Railroad*, 14 B. Mon. 204; *Green* v. *Hudson River Railroad*, 28 Barb. 9; and such seems to be the view of *Comstock*, J., in *Peck* v. *Mayor of New-York*, 3 Coms. 493.

In the case before us, the declaration states that the death occurred on the same day, and, therefore, not necessarily instantaneous; but however it might be in respect to the right of the husband to maintain a suit for such an injury to the wife, to recover damages sustained prior to her death, it is quite clear that no such suit can be maintained by the wife for the like injury to her husband.

For an injury to the person of the husband, not resulting in his death, he alone can sue; and if he die, the cause of action at common law dies with him. And the wife, having no legal interest in the person or property of the husband, but being in that respect like the child or servant, can maintain no action therefor. 3 Black. Com. 143; 1 Chit. Pl. 61. Indeed, no precedent for such suit can be found, unless it be in the practice of our ancestors, at a remote period of English history, by which private pecuniary satisfaction, called a *weregild*, was made to the party injured or his relatives, to expiate great crimes. In the case of a felonious homicide, an appeal by the wife or the heirs-male, in the nature of a civil suit, might be brought to recover this satisfaction or *weregild*, which was fixed by law of King Athelstane according to the dignity of the person slain, in progressive order, from the peasant to the king himself. This proceeding has long been obsolete, and the principle upon which it was founded, being substantially the composition of crimes, finds in modern times no recognition in any jurisdiction where the common law is received.

It is urged by the counsel for the plaintiff that the rule of law which precludes a recovery for damages caused by the killing of another, is founded upon the fact that the property of the felon was forfeited to the king; but, as such forfeiture is now abrogated, the rule itself should be given up. It will be perceived, however, that the rule applies equally to the case of death caused by negligence, as well as by felonious acts, and the argument of the plaintiff, therefore, is unsound. It is true it has sometimes been said that the civil injury is merged in the felony. But an examination of the English authorities will show very clearly that although the civil remedy is there suspended until the criminal prosecution is disposed of, yet there is no such thing as a merger; but, on the termination of the criminal proceedings, the party injured may seek redress for the private injury. The rule which suspends the civil remedy is founded upon public policy, which does not permit the party injured to compound the felony, or to recover compensation for the private injury by suit, until the claims of public justice are

satisfied; otherwise, the party injured might be induced to abstain from a public prosecution, and the criminal justice of the country be thereby defeated.   *Crosby* v. *Long*, 12 East 409, and numerous cases cited; Ham. N. P. 69; Broom Leg. Max. 121, and cases cited; *Stone* v. *Marsh*, 6 B. & C. 551; *White* v. *Spettique*, 13 M. & W. 603; *Peer* v. *Humphrey*, 2 A. & E. 495; *Grafton Bank* v. *Flanders*, 4 N. H. 239; *Pettingill* v. *Rideout*, 6 N. H. 454.   Various other reasons have been assigned for this common law principle, which forbids the recovery of damages for the killing of a human being, and among them is the inappreciable value of human life.   This, however, will not bear a close examination, inasmuch as the same may be said of reputation, the sanctity of the marital relation, and the like, where the law, nevertheless, gives a remedy.   A more satisfactory reason, perhaps, may be found in the ancient and well-established maxim of the common law, *actio personalis moritur cum persona*, which is understood to apply solely to actions in form *ex delicto*, and to the parties plaintiff and defendant.   3 Black. Com. 302; *Wheatly* v. *Lane*, 1 Wm. Saund. 216, n; Broom Leg. Max. 562.   Still it will be observed that this maxim does not reach the case where the suit is brought for an injury to the plaintiff's relative rights, caused by an act which ultimately occasions the death of his wife, child, or servant, the plaintiff and defendant being still living.

If, however, the reasons assigned for the rule are various and not altogether consistent, yet the rule has been too long established, and too generally recognized as a settled principle of the common law, to be now shaken by any thing short of a legislative act.

If the maxim that for every wrong there is a remedy, were to have the application claimed by the plaintiff's counsel, it is easy to see that a wide door would be opened for a multiplicity of suits that have heretofore been unknown to the common law.   The principle which he urges would give a right of action to every one who has an interest in the life of another, against any one who has caused it to be taken away, either by negligence, or by felonious acts amounting to murder or manslaughter.   And it would give such right of action, not only to the wife, child, or any one having a claim upon the deceased for support, but to any one having an interest in the continuance of his life, or who would sustain pecuniary loss by his death; such as creditors, tenants for the life of another, underwriters of a policy of insurance on the life of the deceased, copartners, joint contractors of various kinds, and the like.   Such considerations may well have had an influence in establishing the doctrine of the common law which is under consideration, and it may fairly be supposed that the rule was the result, not of one but of many reasons combined, giving it a solid foundation that has for ages maintained its energy unimpaired.   The maxim which recognizes a remedy for every wrong is attempted to be pressed beyond its legitimate scope, in assuming that to be a wrong which, in the eye of the law, is not such.   The injury inflicted upon the husband or father by an assault and battery or by slander, may seriously affect the wife or child, and even cause them pecuniary loss, but,

nevertheless, the husband or father can alone sue. As to the wife and child, no legal right has been invaded, and, though they may have suffered, yet it is *damnum absque injuria*.

In this case the wife seeks to recover damages for an injury to the husband, causing his death. In several of the cases cited, the question is expressly settled against the plaintiff, and we are clearly of the opinion that the action can not be maintained.

There must, therefore, on the demurrer, be

*Judgment for the defendant.*