Hillsborough-northern judicial district
No. 97-748

MARY C. TROVATO, EXECUTRIX OF THE ESTATE OF WILLIAM B. BOLTON

v.

THOMAS H. DEVEAU

April 21, 1999

*Nixon, Raiche, Manning & Casinghino, P.A.*, of Manchester (*David L. Nixon* and *Leslie C. Nixon* on the brief, and *Ms. Nixon* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Daniel E. Will* on the brief, and *Mr. Dunn* orally), for the defendant.

BRODERICK, J. This is an interlocutory appeal without ruling from the Superior Court (*Sullivan*, J.). *See* SUP. CT. R. 9. The plaintiff, the Estate of William B. Bolton (estate), challenges the constitutionality of RSA 556:13 (1997), which governs the damages recoverable for wrongful death. The transferred question inquires:

> Whether RSA 556:13, which caps at $50,000.00 the damages recoverable in a wrongful death action, where the decedent was not survived by a spouse, child, parent or other dependant relative, violates the rights of the representative of the estate under the New Hampshire or United States Constitution.

We conclude that RSA 556:13 is unconstitutional under the New Hampshire Constitution. Because the Federal Constitution is not more favorable to the plaintiff than the State Constitution in this area, we do not engage in a separate federal analysis. *See Carson v. Maurer*, 120 N.H. 925, 932, 424 A.2d 825, 831 (1980).

I

We accept the statement of the case presented in the interlocutory transfer. *See State v. Johnson*, 134 N.H. 498, 499, 594 A.2d 1288, 1289 (1991). It reveals that William B. Bolton died in December 1996 as a result of an automobile accident allegedly caused by the defendant, Thomas H. DeVeau. At the time of his death, Bolton was not survived by a spouse, child, parent or other dependent relative. The estate filed a wrongful death action in which it sought to recover more than $100,000 in medical bills and other damages in excess of the statutory cap. Relying on the cap, the defendant paid $50,000, plus fees, into the superior court in full settlement of the action and thereafter filed a motion to dismiss. The superior court delayed ruling on the motion and transferred the pending question to this court.

The estate argues that the $50,000 cap for a decedent who is not survived by any dependent relative violates Part I, Article 14 of the New Hampshire Constitution and abridges its right to equal protection of the law. The estate asserts that the cap arbitrarily distinguishes between decedents who are not survived by dependent relatives and those who are, between decedents whose death is causally related to the tort injury and decedents whose death is due

to unrelated causes, and between individuals who survive the injury and those who do not. The estate does not challenge the reasonableness of the cap, and therefore we do not address the adequacy of the monetary limit.

Part I, Article 14 provides:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

We have described this provision as "basically an equal protection clause [because] it implies that all litigants similarly situated may appeal to the courts both for relief and for defense under like conditions and with like protection and without discrimination." *State v. Basinow*, 117 N.H. 176, 177, 371 A.2d 458, 459 (1977) (quotations omitted). The purpose of this provision is "to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to the courts." *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665, 406 A.2d 704, 706 (1979), *appeal dismissed*, 445 U.S. 921 (1980). Part I, Article 14 does not, however, "guarantee that all injured persons will receive full compensation for their injuries." *Id.* Rather, its grant is necessarily relative, only requiring a remedy that conforms to the statutory and common law rights applicable at the time of the injury. *See Opinion of the Justices*, 113 N.H. 205, 210, 304 A.2d 881, 885 (1973). The nature of the right to recover for wrongful death can be understood only by looking at its history. *See, e.g., Hall v. Gillins*, 147 N.E.2d 352, 354 (Ill. 1958).

New Hampshire has never recognized a common law cause of action for wrongful death. *See Wyatt v. Williams*, 43 N.H. 102, 108 (1861); *see also Hebert v. Hebert*, 120 N.H. 369, 370, 415 A.2d 679, 680 (1980). Accordingly, the legislature did not abolish any right when it enacted the first of a series of wrongful death acts, Laws 1850, 953:7, leading to our present statute, RSA 556:9-:14 (1997) (amended 1997, 1998). *See Cogger v. Trudell*, 151 N.W.2d 146, 151 (Wis. 1967). Rather, the legislature created both a right and a remedy that did not previously exist. Therefore, the right to recover for wrongful death is a creature of statute and exists "only to the extent and in the manner provided by the legislature." *Hebert*, 120 N.H. at 370, 415 A.2d at 680. Even legislatively created rights, however, must be constitutional. *See, e.g., Gould v. Concord Hospi-*

*tal*, 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985) (invalidating two-year statute of limitations for wrongful death actions under former version of RSA 556:11); *see also Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 899, 436 A.2d 1136, 1139 (1981) (equal protection guarantee extends to State's granting of privileges as well as to its imposing of restrictions).

■ To review whether the $50,000 wrongful death cap satisfies Part I, Article 14, we must first determine the proper level of constitutional scrutiny to be utilized. *Carson*, 120 N.H. at 931-32, 424 A.2d at 830. The appropriate standard of review is necessarily controlled by the nature of the underlying right. *Id.* The estate argues that because its right to recover for Bolton's injuries and resultant death is an important substantive one, we should apply a middle tier standard of review. The defendant contends that because the legislature merely limited recovery for a statutorily created action, a rational basis test is more appropriate. This court, however, previously resolved the debate and elected to apply a middle tier standard to an estate's right to recover under the wrongful death statute. *Gould*, 126 N.H. at 408-09, 493 A.2d at 1196. Accordingly, we utilize middle tier scrutiny to review the statutory cap before us. *Id.*

■ Middle tier scrutiny requires us to determine whether the classifications created by the statutory cap are reasonable, not arbitrary, and have a fair and substantial relation to the object of the statute. *Carson*, 120 N.H. at 932, 424 A.2d at 830-31. The statute need not be perfectly tailored to satisfy this standard of review. *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 119, 575 A.2d 1280, 1286 (1990). There must, however, be a reasonable nexus between the classifications created by the cap and the object of the legislation. *See id.* at 120, 575 A.2d at 1286.

The estate's challenge to the statutory cap is twofold. First, the estate challenges the distinction within the cap provision itself, *see* RSA 556:13, between decedents who are not survived by dependent relatives and those who are. Second, the estate challenges two distinctions outside the cap provision, *see* RSA 556:9-:14, between: (1) decedents whose death is causally related to a tort injury and decedents whose death is due to unrelated causes; and (2) individuals who survive the injury and those who do not. We address each claim in turn.

## II

With respect to the distinction within RSA 556:13, we conclude that the statutory cap satisfies middle tier scrutiny. While RSA 556:13, on its face, sheds no light on the purpose of the cap, a review of the statute's legislative history, *Chagnon v. Union-Leader Co.*, 104 N.H. 472, 476, 190 A.2d 721, 724 (1963) (law interpreted in light of its legislative history), and prior amendments, *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 538, 703 A.2d 890, 892 (1997) (statute's predecessors offer additional aid), reveals a legislative intent to limit wrongful death recovery for decedents without dependent relatives on the basis of a compensatory purpose. The cap recognizes that dependent and non-dependent relatives have different compensation needs as a result of a decedent's wrongful death, and it reflects the legislature's judgment that non-dependent relatives do not suffer the same economic injury as dependent relatives. In fact, when an amendment was proposed in 1973 by the house of representatives to abolish any limitation on recovery in wrongful death actions, *see* N.H.H.R. JOUR. 604 (1973), the senate rejected the effort and retained a limitation on recovery for estates whose decedents were not survived by dependent relatives. *See* N.H.S. JOUR. 994 (1973). As Senator Bradley explained:

> The thinking here is that if a person doesn't have a close relative or a person who is dependent on him, there isn't really anyone to be compensated for the wrongdoing and allowing the sum in excess of $50,000.00 would be punitive rather than compensatory which is the basic philosophy of the wrongful death statute.

*Id.* at 982. Based on this history, we hold that maintaining a limitation on damages for estates without dependent relatives, while eliminating any cap for estates with dependent relatives, bears a fair and substantial relationship to the compensatory purpose of the statute.

In addition, limiting damages does not impose an unreasonable restriction on private rights. *See Carson*, 120 N.H. at 932, 424 A.2d at 830-31 (middle tier scrutiny includes consideration of reasonableness of statute). In fact, it expands private rights. The benefits available through the wrongful death statute, whether unlimited or capped, would not be available to the plaintiff but for the legislation. *See Wyatt*, 43 N.H. at 108. Thus, the statute does not restrict pre-existing rights but rather creates them where none previously existed. Moreover, in its grant of new tort recoveries, the wrongful

death statute imposes no limit on the existing rights of other plaintiffs. *Cf. Brannigan v. Usitalo*, 134 N.H. 50, 58, 587 A.2d 1232, 1236 (1991) (cap on medical malpractice damages unconstitutional because it imposed burden of supporting insurance industry solely upon persons more severely injured, and, therefore, more in need of compensation). To the contrary, the legislature enacted RSA 556:13 to ensure that the compensation conferred by the wrongful death statute is directed to those it determined generally suffer the greatest economic loss. *See* N.H.S. JOUR. 982.

Accordingly, we conclude that the distinction within RSA 556:13 does not violate the plaintiff's right to recover for personal injuries under Part I, Article 14 of the State Constitution.

■ Since we have determined that maintaining a cap for decedents without dependent relatives, while eliminating any cap for decedents with dependent relatives, can be justified under middle tier scrutiny based on the compensatory purpose of the statute, it necessarily follows that this distinction would satisfy the equal protection clause under the facts of this case. *See Opinion of the Justices*, 134 N.H. 266, 274, 592 A.2d 180, 184-85 (1991). Accordingly, we conclude that the distinction within RSA 556:13 does not violate the plaintiff's right to equal protection under the law.

### III

With respect to the distinctions outside the cap provision, RSA 556:9-:14, we first address the distinction between decedents whose deaths are causally related to a tort injury and decedents whose deaths are due to unrelated causes. RSA 556:13 states that the cap applies to damages recoverable "in such an action." The phrase "in such an action" refers to the type of action described in the preceding section, RSA 556:12, which prescribes the damages available where "the death of [the deceased] party was caused by the injury complained of in the action." *Burke v. Burnham*, 97 N.H. 203, 210, 84 A.2d 918, 924 (1951). Thus, the statutory cap in RSA 556:13 restricts only the damages available in an action where the decedent's death is causally related to the injury. *Id.* at 208, 84 A.2d at 923. Based on our review, we conclude that the statutory cap does not satisfy middle tier scrutiny because the distinction between decedents whose death is causally related and decedents whose death is unrelated to the injury is arbitrary and does not have a fair and substantial relation to the object of the wrongful death statute. *See Carson*, 120 N.H. at 932, 424 A.2d at 830-31.

By its terms, RSA 556:12 allows recovery for the losses sustained by the decedent prior to death and the losses sustained by the

decedent's estate as a result of the death. *See Lozier v. Brown Company*, 121 N.H. 67, 69-70, 426 A.2d 29, 31 (1981); *see also Lees v. Nolan*, 121 N.H. 680, 682, 433 A.2d 1287, 1288 (1981) ("mental and physical pain suffered by the deceased in consequence of the injury" is a pre-death loss, while "his capacity to earn money during his probable working life" is a post-death loss). There is no indication in RSA 556:12, RSA 556:13, or other sections of the wrongful death statute that the cap is limited to the estate's recovery of post-death losses. Thus, the cap applies to the estate's recovery of both pre-death and post-death losses when a decedent's death is causally related to the injury, whereas no cap applies to pre-death losses when a decedent's death is unrelated to the injury. In other words, had Bolton died from a cause unrelated to the tort injury, his estate's recovery of pre-death damages (*e.g.*, medical bills) would not have been subject to the cap. Therefore, we must determine whether the legislature's intent constitutionally justifies this distinction.

Neither the wrongful death statute itself, nor its legislative history and prior amendments, shed much light upon the purpose of the cap concerning pre-death damages. At most, the statute's legislative history and prior amendments reveal an arguable intent to cap an estate's recovery of post-death damages. A review of the statute's prior amendments reveals that when recovery for wrongful death became generally available in 1879, the legislature restricted recovery to the decedent's pre-death damages according to common law tort principles. *See* Laws 1879, 35:1; *West v. Railroad*, 81 N.H. 522, 526, 129 A. 768, 771 (1925). In 1887, when the legislature allowed a decedent's death to be considered in a wrongful death action and expanded the remedies to include post-death damages, it imposed a cap on the amount of recovery available. *See* Laws 1887, 71:3; *French v. Mascoma Co.*, 66 N.H. 90, 98, 20 A. 363, 364 (1889). The only action that could be brought under the 1879 and 1887 statutes, however, was one where the decedent's death was causally related to the tort injury. *See French*, 66 N.H. at 98, 20 A. at 364.

Subsequently, in 1891, the legislature expanded the scope of the 1887 statute to allow an estate to recover for the decedent's pre-death losses when the death was unrelated to the injury and to recover for both the decedent's pre-death losses and the estate's post-death losses when the death was causally related to the injury, capping the recovery available under both types of actions. *See* Laws 1891, 191:8-:11; *Hall v. Brusseau*, 100 N.H. 87, 89, 119 A.2d 703, 704 (1956). Then, in 1926, the legislature limited the cap to actions where the decedent's death was causally related to the tort

injury. *See* Laws 1926, 302:13; *Burke,* 97 N.H. at 210, 84 A.2d at 924 (cap applies only to damages for injuries causing death because those are more speculative).

Based on our review, we are unable to discern the legislature's intent in imposing a cap on pre-death damages in causally related actions while allowing unlimited pre-death damages in non-causally related actions. The statute's purpose to compensate the beneficiaries of a decedent's estate for their economic loss, *see, e.g.,* N.H.S. JOUR. 994 (1973), bears no relation to the imposition of a cap on the recovery of a decedent's pre-death losses when death is causally related to the injury but no cap when the death is unrelated, because these losses are sustained by the decedent *regardless* of whether the resulting death was causally related to the tort injury. Because we conclude that this distinction is not justified, and thus fails middle tier scrutiny, we need not address whether the cap would be justified if it applied solely to the estate's recovery of post-death damages.

█ Accordingly, we conclude that the imposition of a cap on pre-death damages when a decedent's death is causally related to the injury but no cap when a decedent's death is unrelated to the injury violates the plaintiff's right to recover for personal injuries under Part I, Article 14 of the State Constitution. Having found a direct violation of Part I, Article 14, we need not engage in a separate equal protection analysis. *See Opinion of the Justices,* 134 N.H. at 274, 592 A.2d at 184-85.

Because our determination on this issue is dispositive, we need not address the estate's remaining challenge to the distinction between individuals who survive the tort injury and those who do not. *See Dime Savings Bank of New York v. Town of Pembroke,* 142 N.H. 235, 238, 698 A.2d 539, 541 (1997).

*Remanded.*

THAYER, J., sat but did not participate in the decision; HORTON, J., dissented; the others concurred.

HORTON, J., dissenting: I respectfully disagree with today's decision striking down the wrongful death recovery cap, RSA 556:13 (1997), because I perceive the majority's equal protection analysis to be flawed in several respects.

First, the majority determines that classifications created by the cap should be assessed under middle tier constitutional scrutiny. I would measure the constitutionality of the recovery cap under the rational basis test. The majority observes that the right to recover for wrongful death did not exist at common law, and endures now

solely as a creature of statute. It then correctly notes that the right of recovery exists "only to the extent and in the manner provided by the legislature." *Hebert v. Hebert*, 120 N.H. 369, 370, 415 A.2d 679, 680 (1980). Since the classifications alleged here are not of a "suspect" or "quasi-suspect" nature, and the right limited is not fundamental, or even of common law origin, we should ask whether the legislature could have had a rational or reasonable basis for limiting a right of its own creation. *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 667, 406 A.2d 704, 707 (1979), *appeal dismissed*, 445 U.S. 921 (1980). The majority necessarily answers this question in the affirmative when it holds that permitting estates with dependents to recover unlimited wrongful death damages, while limiting estates with no dependents to a recovery of $50,000, withstands the more rigorous middle tier analysis. I do not quarrel with the premise that a statutory right must comply with constitutional standards, *see Gould v. Concord Hospital*, 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985); however, the majority ratchets the standard of constitutional scrutiny to a level inconsistent with our usual deference to legislatively created rights. *See Petition of Abbott*, 139 N.H. 412, 418-19, 653 A.2d 1113, 1117-18 (1995) (statutory limit on worker's recovery for soft-tissue spinal injury upheld under rational basis review). In so doing, it is ultimately able to abolish the damages cap, ignoring the intent of the legislature to provide a limited right of recovery where none had previously existed.

Furthermore, the majority steps beyond the bounds of traditional equal protection analysis and compares two dissimilar groups. *See Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975) (equal protection mandates that those who are similarly situated be similarly treated). Detecting no unfair discrimination within RSA 556:13 under middle tier scrutiny, the majority, rather than appropriately ending its inquiry by answering the question posed on transfer, narrows its focus to an obscure group: wrongful death claimants without dependents seeking "pre-death damages" beyond the $50,000 cap. The majority proceeds to measure this remote class against tort claimants who die from a cause unrelated to the tort, who can purportedly recover unlimited "pre-death damages" in a survival action. The majority finds discrimination that cannot be justified under middle tier scrutiny. I contend, however, that these groups are dissimilar and thus unfit for comparison in the equal protection context. In addition, it is my belief that there is substantial reason to treat the two classes differently vis-a-vis the cap.

The most striking difference is that the estate with no dependents pursuing a wrongful death claim has available to it a broader damages scheme that, absent the cap, is permissive of unfettered recovery. *See* RSA 556:12, I (Supp. 1998) (providing that estate may recover for lost earnings during probable duration of working life and for probable duration of the life itself). The cap acknowledges a policy in favor of limited recovery where the estate does not have dependents. Moreover, the cap responds to the risk that a jury may be more likely to award greater compensation to the estate where the tortfeasor caused the decedent's death. The estate of a tort plaintiff proceeding under the survival statute, however, has a narrower damages scheme. The estate could not recover damages for the loss of the decedent's life or for future lost earnings because the tortfeasor would not have caused the decedent's intervening death. All that could be recovered from the tortfeasor are "pre-death damages." In this way, the unrelated death functionally caps damages, rendering a statutory cap superfluous. Furthermore, since the tortfeasor would not be identified by the jury as the cause of the decedent's death, an exorbitant recovery would be far less likely than in a wrongful death action.

> Many laws affect certain groups unevenly. Any statute that confers either benefits or burdens necessarily creates a class of persons who may be worse off as a result of the legislation than they would have been without it. It has been said that every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function. Absent invidious discrimination, however, the mere exist-ence of a classification does not justify this court in overturning the action of the elected legislature on equal protection grounds.

*Estate of Cargill*, 119 N.H. at 667, 406 A.2d at 707 (quotations, citations, and brackets omitted). My qualm is that today's decision clears the way for a host of equal protection challenges to sound legislation that will be based on the identification of obscure, unforeseeable classifications, and the comparison of groups who are, at best, only marginally similar.

In sum, I contend that we impose too stringent a standard of constitutional scrutiny, compare fundamentally dissimilar groups, go beyond the question certified to us, and vastly broaden a remedy that was created by the legislature with the intention that it be limited. Accordingly, I respectfully dissent.