Graham v. Warden, et al.          CV-02-377-B   01/30/03

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Melvin Graham

_____

    v.                              Civil No. 02-377-B
                                        Opinion No. 2003 DNH 020

Bruce Cattell, Warden,
Northern Corrections Facility, et al.

_____

## REPORT AND RECOMMENDATION

Melvin Graham has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging claims for denial of adequate medical care and access to the courts in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and New Hampshire state law. The complaint seeks declaratory, injunctive and monetary relief. Named as defendants are Phil Stanley, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), and four officers and employees of the Northern Corrections Facility ("NCF"): Bruce Cattell, Warden; Angela Rouleau, Librarian and Media Generalist; and nurses McCauley and Rancourt.

As Graham is proceeding pro se and in forma pauperis, the complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S. District Court for

the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I find that Graham has alleged Eighth Amendment claims for monetary relief, premised on the denial of adequate medical care, against Stanley, Cattell and McCauley in their individual capacities. I recommend dismissal of all remaining claims.

### STANDARD OF REVIEW

In reviewing a pro se complaint, this court must construe the pleading liberally. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of that party). At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). Dismissal of pro se, in forma pauperis complaints is appropriate if they are frivolous or

2

malicious, fail to state a claim upon which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). I apply this standard in reviewing Graham's complaint.

## BACKGROUND

Crediting the factual allegations in Graham's complaint as true, and construing all reasonable inferences from the pleadings in his favor, the material facts appear to be as follows. Graham is currently incarcerated at the NCF where he is serving a sentence imposed by the New Hampshire Superior Court (Rockingham County). During the course of his incarceration, Graham asserts, defendants have denied him adequate medical care and meaningful access to the courts.

### Denial of Adequate Medical Care

At approximately 10:00 a.m. on a Friday morning, Graham became ill and experienced symptoms that included two welts on his head, profuse sweating and a high fever. Surmising that he was bitten by a spider, he reported his condition to Nurse McCauley at 11:00 a.m., two hours after the designated time for sick call had elapsed. Although a physician was on duty at the NCF that morning, McCauley nevertheless denied Graham an

3

appointment with the physician and directed him to go to sick call the following Monday. As the day progressed, Graham's condition deteriorated and at 1:00 a.m. he requested a visit to health services for immediate medical attention. Once again, Graham "was told by McCauley, via Officer Mailhot, that he would have to wait until sick call on Monday." By Monday, Graham's temperature had risen to 104 or 105 degrees, requiring him to be hospitalized for nearly one week and treated with antibiotics. He claims that defendants, through their actions and omissions and failure to institute policies to ensure that inmates receive adequate medical care, denied him essential medical treatment and endangered his life.

### Denial of Access to the Courts

Graham further asserts that during his incarceration at the NCF, defendants denied him adequate access to legal resources in the law library, thereby interfering with his meaningful access to the courts. He asserts that Rouleau, in her capacity as Librarian at the NCF, instituted a policy that was designed to deny inmates the use of the recreation library during their law library visits. While visiting the law library, Graham attempted to use the legal resources contained in the recreation library

4

but was directed to leave. He refused, maintaining that the "full volume set of American Jurisprudence, and the Federal Supplements are kept in the recreation library." (Count II) According to Graham, most of the legal materials at the NCF library are accessible only through LOIS Law, a legal research database that requires the use of a computer. Because of his computer illiteracy and the prison's refusal to provide him with computer training or assist him in using LOIS Law, Graham claims that he is dependent upon the written legal materials contained in the recreation library. A grievance form dated April 2, 2002 documents his requests for computer training and complaints relating to access to legal materials. In response to his grievance, the prison stated that "[t]here is a manual on how to use LOIS." Nevertheless, Graham maintains that adequate computer training is unavailable and that the prison policies, instituted or approved by Stanley, Cattell and Rouleau are "designed to limit and deny access to the law library at NCF, thus hampering and denying access to the courts." (Count II) The record is silent as to whether Graham sustained actual injury as a result of the library policies or whether the action or inaction of prison officials has frustrated or impeded his legal claims.

5

Graham brings this civil rights action, alleging that defendants' actions or omissions violate his rights to adequate medical care (Count IV) and meaningful access to the courts (Counts I-III), as guaranteed by the Eighth and Fourteenth and Amendments to the United States Constitution and New Hampshire law.

DISCUSSION

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). The premise of Graham's Section 1983 claim is that the defendants, acting under color of state law, denied him adequate medical care and access to the courts, in violation of his rights under the Eighth and Fourteenth Amendments.

6

A. <u>Denial of Adequate Medical Care</u>

Graham alleges that McCauley and Rancourt violated his rights under the Eighth Amendment[1] by withholding essential health care (Count IV).  To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>See</u> <u>Estelle</u>, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1993).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Estelle</u>, 429 U.S. at 104-05.  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a

---

[1]The Fourteenth Amendment makes the Eighth Amendment applicable to state actors.  <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 17 (1st Cir. 1991).

doctor's attention.'" See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)( quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care. First, Graham has described serious and acute symptoms, including a fever of 104 to 105 degrees, that resulted in his immediate hospitalization for nearly one week.

Second, he has demonstrated deliberate indifference with respect to McCauley by alleging that once she was notified of his serious medical needs, she nevertheless denied him proper care. As evidenced by Graham's attached affidavit, he reported his condition to McCauley at 11:00 a.m. on a Friday and explained that he was experiencing welts on his head, profuse sweating and a high fever. Even though a prison physician was on duty that morning, McCauley denied Graham an appointment and directed him to go to sick call the following Monday. When Graham's condition further deteriorated that day, he requested immediate medical attention, however, McCauley once again denied his request and directed him to wait until Monday for treatment. By Monday Graham's temperature had risen to 104 or 105 degrees, and his

condition deteriorated to the point that he needed to be transported by wheelchair to the health services department at NCF. Shortly thereafter, he was hospitalized and treated with antibiotics for nearly one week. If true, the allegations demonstrate that McCauley's actions and omissions prevented Graham from receiving prompt and essential medical treatment for a serious condition. Accordingly, I find that Graham has stated an Eighth Amendment claim, premised on the denial of adequate medical care, against McCauley in her individual capacity (Count IV). Because the complaint wholly fails to provide any factual predicate in support of an Eighth Amendment claim against Rancourt, I recommend dismissal of the claim against her.

B. Denial of Access to the Courts

Graham alleges that Stanley, Cattell and Rouleau have violated his right of access to the courts by instituting policies that are designed to deny inmates adequate access to the law library at the NCF (Counts I-III). He further alleges that the prison failed to provide him with computer training that would have enabled him to access a computerized legal research database and conduct legal research. Defendants' actions, he contends, violate his rights to meaningful access to the courts,

9

as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 14 of the New Hampshire Constitution.[2]

It is undisputed that inmates have a constitutionally protected right of meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 828 (1977); Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000). "This right 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986)(quoting Bounds, 430 U.S. at 828)).

While a prison inmate retains a right of access to the courts, to establish a claim he must allege that he suffered actual injury as a result of defendants' actions. See Lewis v. Casey, 518 U.S. 343, 351-52 (1996). An inmate cannot establish relevant actual injury simply by alleging that "his prison's law

---

[2]Construed liberally, the complaint alleges a claim for denial of meaningful access to the courts, as guaranteed by Article Fourteen of the New Hampshire Constitution. The purpose of Article Fourteen is "to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to the courts." Trovato v. DeVeau, 143 H.H. 523, 525, 736 A.2d 1212, 1214 (1999).

library or legal assistance program is subpar in some theoretical sense." Id. at 351. He must demonstrate that the alleged shortcomings in the law library or legal assistance program "hindered his efforts to pursue a legal claim." Id. ("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.")

Here, Graham has failed to allege any relevant actual injury that resulted from the library policies in effect at the NCF. While he has alleged that a disciplinary report was filed when he violated the library policy, he has not alleged that the report was retaliatory in nature or that any constitutional harm ensued. Nor has he alleged that any action or inaction of prison officials has frustrated or impeded a specific legal claim. See Lewis, 518 U.S. at 356 (stating that a prisoner must assert that an actionable claim regarding his sentence of condition of confinement 'has been lost or rejected, or that the presentation

11

of such a claim is currently being prevented'). Rather, as the record reflects, Graham has succeeded in presenting his constitutional claims to this court. Without demonstrating that the absence of legal resources has prevented him from participating meaningfully in the legal process, he fails to allege any constitutional deprivation. Accordingly, I recommend dismissal of Graham's Fourteenth Amendment claims for denial of access to the courts as he fails to state a claim upon which relief may be granted (Counts I-III). I further recommend dismissal of his parallel state law claims under Article Fourteen of the New Hampshire Constitution and his related claims for prospective injunctive relief (Counts I-III).

II. Supervisory Liability

Construed liberally, the complaint names Stanley and Cattell in their respective supervisory capacities as Commissioner of the NHDOC and Warden of the NCF. While defendants were not directly involved in the alleged deprivations, they allegedly instituted prison policies that denied inmates, like Graham, adequate medical care. Further, they tacitly approved the conduct of subordinate officers who denied Graham prompt and adequate medical care.

12

Under Section 1983, *respondeat superior* cannot serve as a basis for liability. See County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). A supervisor may be held liable only on the basis of his own acts or omissions which must rise to the level of reckless or callous indifference to the constitutional rights of others. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994). In addition, there must be an affirmative link between a subordinate's misconduct and the supervisor's action or inaction, whether through direct participation or through conduct that amounts to condonation or tacit authorization. See Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)(quoting Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999)). A supervisor "may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998).

Here, the complaint alleges that Stanley and Cattell instituted and enforced prison policies that deprived Graham of prompt and adequate medical care. Construed liberally, the complaint alleges that defendants tacitly approved of McCauley's

conduct, her purposeful delay in rendering care to Graham and her actions in forcing him to wait more than two days to be treated for a serious condition that required hospitalization. A liberal reading of the complaint suggests that defendants were aware of the conduct of their subordinates but failed to intervene or correct the alleged deprivations. If true, these allegations may well give rise to viable claims against Stanley and Cattell for their tacit condonation of the actions and omissions of the subordinate officers. Accordingly, I find that Graham has alleged the minimum facts necessary to state Eighth Amendment claims, premised on the denial of adequate medical care, against Stanley and Cattell in their supervisory capacities (Count IV).

III. Official Capacity

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by the defendants as state actors in their official capacities. It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalfe & Eddy, Inc., 506 U.S.

14

139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. To the extent Graham brings official capacity claims for monetary relief against the defendants, all of whom are NHDOC and NCF officials or employees, I recommend such claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983. See Will, 491 U.S. at 71 n.10; Ex parte Young, 209 U.S. 123, 159-60 (1908). Thus, Graham is not barred from bringing viable claims for prospective injunctive relief against the defendants in their official capacities. The prospective injunctive relief sought, however, relates solely to Graham's claims for denial of access to the courts, none of which claims are viable. Accordingly, I recommend dismissal of his claims for

15

prospective injunctive relief.

CONCLUSION

For the reasons stated above, I find that Graham has alleged Eighth Amendment claims, premised on the denial of adequate medical care, against Stanley, Cattell and McCauley in their individual capacities. I recommend dismissal of all remaining claims. Accordingly, by separate order issued simultaneously with this report and recommendation, I authorize the above viable claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint. If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this report and recommendation, or he must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979

16

F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,
792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date:   January 30, 2003

 cc:    Melvin Graham, <u>pro</u> <u>se</u>