Carroll
No. 2007-039

MICHELLE ALONZI, ADMINISTRATRIX OF THE ESTATE OF GLENN HOPKINS

v.

NORTHEAST GENERATION SERVICES COMPANY & a.

Argued: September 19, 2007
Opinion Issued: January 15, 2008

*Burns, Bryant, Cox, Rockefeller & Durkin*, of Dover (*Paul R. Cox & a.* on the brief, and *Sarah E. Cox* orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Timothy A. Gudas & a.* on the brief, and *James E. Owers* orally), for defendant Northeast Generation Services Company.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Patrick H. Taylor* on the brief), for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

BRODERICK, C.J. This case comes before us on interlocutory appeal from a ruling by the Superior Court (*Mohl*, J.), *see* SUP. CT. R. 8, declining to dismiss negligence and wrongful death actions filed by the plaintiff, Michelle Alonzi, as administratrix of the estate of Glenn Hopkins, against defendant Northeast Generation Services Company (NGS). Because we overrule *Park v. Rockwell International Corp.*, 121 N.H. 894 (1981), the touchstone case relied upon by the trial court, and uphold the constitutionality of the challenged death benefit provision of the Workers' Compensation Law, *see* RSA 281-A:26, IV (1999), we reverse and remand.

I

We draw upon the interlocutory appeal statement for the facts. The decedent, Glenn Hopkins, was employed by NGS in June 2003. While acting within the scope of his employment, Hopkins accidentally died from electrocution. He left no dependents. The plaintiff brought an action on behalf of his estate, asserting negligence and wrongful death claims against three defendants: Waste Management of NH, Inc. T.R.E.E.; Transformer Services, Inc.; and NGS. NGS moved to dismiss the claims

against it, asserting immunity from tort liability under the workers' compensation exclusivity provision, RSA 281-A:8 (Supp. 2007), and death benefit provision, RSA 281-A:26, IV. The plaintiff objected, and the trial court denied the motion, relying upon our holding in *Park*. Subsequently, the trial court approved the following question for interlocutory appeal:

> Did the Superior Court err in denying NGS' Motion to Dismiss, and in ruling that the estate of an employee who died without dependents may maintain a wrongful death action against the employer, on the basis that the provisions of RSA 281-A:8 and RSA 281-A:26, IV are unconstitutional according to *Park v. Rockwell?*

The plaintiff argues that the trial court properly followed the *Park* decision, which held that the exclusive nature of the death benefit available under the Workers' Compensation Law for employees who die without dependents in the course of their employment violated equal protection afforded under our State Constitution. *Park*, 121 N.H. at 900. NGS, however, contends that because the rationale of *Park* has been eroded in subsequent cases, we should overrule it and uphold as constitutional the exclusivity of the death benefit available to the plaintiff under the Workers' Compensation Law.

In *Park*, we considered facts similar to those before us, and addressed the difference in the statutory remedies afforded to estates of dependentless decedents who are killed at work as compared to the estates of dependentless decedents who are killed outside of work. Under the former version of the Workers' Compensation Law, the estate of a dependentless decedent killed at work could recover no more than $1,200 in burial expenses. *See id.* at 897. The statute remains the same, except that the maximum cap for burial expenses is now $5,000. *See* RSA 281-A:26, IV. The estate of a dependentless decedent who was killed outside of work, however, could pursue a wrongful death claim and recover up to $50,000 in damages. *See* RSA 556:13 (2007).

Using middle-tier scrutiny, we held that the different treatment of these two classes of estates violated equal protection under Part I, Article 12 of our State Constitution. *Park*, 121 N.H. at 899-900. We declared the exclusivity of the death benefit provision under the Workers' Compensation Law to be unconstitutional

> to the extent it applies to employees without dependents who are killed in the course of their employment ... and the plaintiff in this case is entitled to proceed with an action for wrongful death

against his decedent's employer if he elects to forego the benefits otherwise provided under RSA ch. 281.

*Id.* at 900. While noting that "[o]bviously, in cases involving wrongful death, dependentless employees may be treated differently than other deceased persons who die without dependents ... [due to] the employer-employee status," *id.* at 898 (citations omitted), we struck down the exclusive nature of the death benefit provision, *id.* at 900. In so doing, we focused solely upon the disparity between the potential $50,000 recovery under the wrongful death statute and the limited burial expense benefit under the Workers' Compensation Law and reasoned:

> In order to hold that [the challenged] provisions of our workmen's compensation law are constitutional, we would have to determine that the lives of the deceased employees, leaving no one dependent upon them *at the time* of their work-related deaths, are essentially "worthless." This we cannot do.
> ... It would not be just, under the pretext of qualifying the decedent for workmen's compensation benefits which under the terms of that statute he will never receive and which are nominal in nature, to foreclose the right of his estate, where the facts otherwise warrant it, to maintain a wrongful death action against the employer.

*Id.* at 899-900.

NGS contends that a subsequent line of New Hampshire cases discredits our analysis in *Park. See Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162 (1985), *overruled by Young v. Prevue Products, Inc.*, 130 N.H. 84 (1987); *Thone v. Liberty Mutual Ins. Co.*, 130 N.H. 702 (1988); *Thompson v. Forest*, 136 N.H. 215 (1992). It argues that these cases, as well as foreign cases, establish that the proper constitutional framework requires review of the death benefit provision in light of the comprehensive scheme of benefits provided by the Workers' Compensation Law. Thus, it contends, the *Park* analysis in which we compared the recovery available under the death benefit provision in isolation to that available under the wrongful death statute is outmoded and no longer viable.

## II

We do not lightly overrule a case that has been precedent for over twenty-five years. "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise

of judicial will with arbitrary and unpredictable results." *Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504 (2003) (quotations omitted). When asked to overrule a prior holding, we do not look at the issues *de novo*; rather, we review "whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." *Id.* at 504-05 (quotation omitted).

> Several factors inform our judgment, including: (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Id.* at 505 (quotations and citations omitted). We have considered the status of the law in other jurisdictions to examine whether the challenged holding is unworkable or outside the development of the law. *See id.* After considering these various factors, we conclude that the legal landscape has changed to such a degree as to require us to overrule *Park*.

Four years after *Park*, we reviewed the constitutionality of a 1978 amendment to the Workers' Compensation Law that barred an injured employee's right to maintain non-intentional tort actions against a co-employee. *Estabrook*, 127 N.H. at 166. While the provisions were challenged on both due process and equal protection grounds, we did not analyze these grounds separately. Rather, we examined whether the 1978 amendment provided a quid pro quo, or an adequate substitute remedy, for the rights of action it otherwise extinguished. *Id.* at 172. Relying upon our narrow analytical framework in *Park*, we struck down the challenged provisions because the amendment itself provided no substitute remedy. *Id.* at 178. Justice Souter dissented. *Id.* at 181-87 (Souter, J., dissenting). He read the majority's opinion as deciding the matter on equal protection grounds, and for the reasons he stated in his dissent, we agree. *Id.* at 181 (Souter, J., dissenting). Justice Souter opined that the correct equal protection analysis of a limitation imposed by the Workers' Compensation Law requires review of the entire spectrum of benefits provided to employees under that law. *See id.* at 186 (Souter, J., dissenting).

Just two years later, we overruled *Estabrook* "[t]o the extent that [its] holding ... may be interpreted as requiring that a restrictive amendment to the workers' compensation law must be supported by a contemporaneously enacted provision for a new benefit." *Young*, 130 N.H.

at 88. The following year, we further clarified that when conducting a quid pro quo analysis to ensure that a particular workers' compensation provision does not infringe upon due process rights under Part I, Article 14 of our State Constitution, "the appropriate analysis . . . is to look at the workers' compensation law *in its entirety." Thone*, 130 N.H. at 705 (emphasis added); *see also Thompson*, 136 N.H. at 218-19. While *Thone* and *Young* were grounded upon due process, not equal protection, the cases are instructive because, in them, we rejected the narrow approach we used in *Estabrook* and *Park*. This subsequent history undermines the continued viability of the narrow analytical framework we used in *Park*.

Significantly, the *Park* case has been expressly rejected in at least two other states. *See Taylor v. Southeast-Harrison Western Corp.*, 694 P.2d 1160, 1161-62 (Alaska 1985); *Nosser Dependents v. Natchez Jitney Jungle*, 511 So. 2d 141, 142, 143-44 (Miss. 1987). Indeed, the *Taylor* and *Nosser* courts noted that *Park* stood alone in the face of the majority of jurisdictions. *Taylor*, 694 P.2d at 1162 ("The overwhelming weight of authority, however, is to the contrary. Every other jurisdiction that has addressed this constitutional issue has upheld the exclusive remedy provision as it relates to non-dependents."); *Nosser*, 511 So. 2d at 142 (after reviewing status of law in other jurisdictions, court noted, "Appellants cite only one case[, *Park*,] wherein a like provision was found to be unconstitutional."). While *Taylor* and *Nosser* were decided about twenty years ago, NGS cites them in its brief and the plaintiff identifies no foreign case that follows *Park*. Moreover, in circumstances nearly identical to those before us, numerous jurisdictions have rejected an equal protection challenge to the restrictive death benefits available under a workers' compensation law when an employee is fatally injured on the job and leaves no eligible dependents. *See, e.g., Yarchak v. Munford, Inc.*, 570 So. 2d 648, 650-51 (Ala. 1990), *cert. denied*, 500 U.S. 942 (1991); *Mullarkey v. Florida Feed Mills, Inc.*, 268 So. 2d 363, 364-66 (Fla. 1972), *appeal dismissed*, 411 U.S. 944 (1973); *Estate of Coates v. Pacific Engineering*, 791 P.2d 1257, 1260-61 (Haw. 1990); *Sanchez v. M.M. Sundt Const. Co.*, 706 P.2d 158, 160-61 (N.M. Ct. App. 1985). Courts in these jurisdictions did not review the death benefit provision in isolation, but rather in the context of the other benefits provided by the workers' compensation statute at issue. That these courts used rational basis, rather than intermediate scrutiny, is of no moment. When reviewing the constitutionality of a workers' compensation provision, a myopic versus a comprehensive lens is either proper or not regardless of the level of scrutiny applied. Review of these other jurisdictions further amplifies that *Park* is outside the development of the law.

■ We conclude that the legal landscape demonstrates that the piecemeal approach we used in *Park* to analyze the constitutionality of the death benefit provision is a remnant of abandoned doctrine and otherwise is out of step with the development of the law. *See Jacobs*, 149 N.H. at 504, 505. Accordingly, we overrule *Park* and turn next to assess anew whether treating differently the estates of dependentless decedents who are killed at work and the estates of dependentless decedents who are killed outside of work violates equal protection under Part I, Article 12 of our State Constitution. We note that a challenge under the Equal Protection Clause of the Federal Constitution was not raised in this case.

## III

"The constitutionality of a statute involves a question of law, which we review *de novo*." *Gonya v. Comm'r, N.H. Ins. Dep't*, 153 N.H. 521, 524 (2006) (quotation omitted). Further, we presume statutes "to be constitutional and we will not declare [one] invalid except upon inescapable grounds." *Id.* The particular inquiry before us is whether the exclusivity of the death benefit available to the estates of dependentless decedents killed at work under the Workers' Compensation Law violates equal protection afforded by Part I, Article 12 of our State Constitution.

"[T]he equal protection guarantee is essentially a direction that all persons similarly situated should be treated alike." *In re Sandra H.*, 150 N.H. 634, 637 (2004) (quotation omitted). A classification cannot be arbitrary, "but must reasonably promote some proper object of public welfare or interest." *Id.* (quotation omitted). "In considering an equal protection challenge under our State Constitution, we must first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected." *Id.* (quotation omitted). The various possible review standards are commonly known as strict scrutiny, intermediate or middle tier scrutiny, and the rational basis test. *See id.* at 637, 638; *Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748, 762 (2007).

The parties dispute whether intermediate scrutiny or the rational basis test is the correct standard of review in this case. The plaintiff argues that because the death benefit provision limits the right to recover, which is an important substantive right, the provision must pass intermediate scrutiny to satisfy equal protection. NGS contends, however, that we apply the rational basis test when reviewing the constitutionality of Workers' Compensation Law provisions.

Our decision in *Trovato v. DeVeau*, 143 N.H. 523 (1999), dictates that we apply intermediate scrutiny to assess the disparate treatment between the classes of estates. In *Trovato*, we applied middle tier scrutiny to assess the

constitutionality of different treatment of certain classifications within and outside of the wrongful death statute. *Trovato*, 143 N.H. at 524-25, 526. We rejected the argument that rational basis should apply to assess the constitutionality of the classifications because the legislature merely limited recovery for a statutorily created action. *Id.* at 526. We noted that we had "previously ... elected to apply a middle tier standard to an estate's right to recover under the wrongful death statute." *Id.*; *see Gould v. Concord Hospital*, 126 N.H. 405, 408-09 (1985). Because the present dispute involves precluding certain estates from bringing claims under the wrongful death statute, *Trovato* dictates that we apply middle tier scrutiny.

NGS relies upon *Petition of Abbott*, 139 N.H. 412 (1985), and *Arsenault v. Abbott Furniture Corp.*, 122 N.H. 521 (1982), to contend that we should apply the rational basis test. *Petition of Abbott* and *Arsenault* are distinguishable, however, as neither involved abolishing a right to recover. *Petition of Abbott* concerned an equal protection challenge to a provision that granted additional benefits only to workers who suffered certain spinal injuries. *Petition of Abbott*, 139 N.H. at 417. *Arsenault* involved whether allowing workers who injured two or more fingers to recover for the loss of function of their entire hand and disallowing such recovery to workers who injured only their thumbs violated equal protection. *Arsenault*, 122 N.H. at 522. The equal protection challenges to these Workers' Compensation Law provisions, however, only implicated the legislative balance of economic burdens and benefits and did not involve the abolition of the right to recover for one's personal injuries. *See Abbott*, 139 N.H. at 418. By contrast, the equal protection challenge before us directly implicates the plaintiff's right to recover under the wrongful death statute. Because we have previously decided that the deprivation of such a right requires middle tier scrutiny, we reject the defendant's entreaty to apply the rational basis test. Accordingly, we turn our attention to the constitutionality of the disparate treatment between the classes of estates.

█ We have recently clarified our middle tier standard. *See Cmty. Res. for Justice*, 154 N.H. at 760-63. "[I]ntermediate scrutiny under the State Constitution requires that the challenged legislation be substantially related to an important government objective." *Id.* at 762. "The burden to demonstrate that the challenged legislation meets this test rests with the government [or the party seeking to uphold the statute]." *Id.* Reliance upon "justifications that are hypothesized[,] ... invented *post hoc* in response to litigation," or "overbroad generalizations" are insufficient to uphold challenged legislation. *Id.* (quotations omitted).

We first consider whether the exclusivity of the death benefit provision is based upon an "important" government interest. The death benefit provision is part of the comprehensive system of benefits afforded to employees under the Workers' Compensation Law. This law, as a whole, treats employees as a class differently from other tort victims. Thus, the "importance" of the government's interest in enacting the death benefit provision, which consequently distinguishes between the estates of dependentless decedents who are killed at work and the estates of dependentless decedents who are killed outside of work, must be considered in light of the overall purpose of the law as a whole.

The Workers' Compensation Law was a radical legislative response to the evils underlying the common law tort recovery system particular to the employer-employee relationship. *See Mulhall v. Company*, 80 N.H. 194, 199 (1921). The industrial revolution created, as a byproduct, a surplus of personal injury lawsuits filed by employees against their employers. *See id.* at 196. The courts were "filled with litigation; [which] became the fruitful source of perjury; ... engendered bitterness between employer and employee; ... resulted in great economic waste, and ... turned out an army of maimed and helpless people as dependents upon the charity of friends or the public." *Id.* (quotation and ellipsis omitted). Employers also incurred the particular burden of falling victim to unjust or excessive claims. *Id.* at 197.

The Workers' Compensation Law was designed to supplant this unsatisfactory system of common law recovery and place the risk of injury more properly upon whom it belonged. *Id.* Namely, the risk would "be borne in the first instance by [the] employer[,] and ... the employer [could] protect himself by adding the premium paid for insurance, and the cost of administering the law, to the over-head charges of his business as a basis for determining the cost and the price of his product, thus transferring the burden to the consumer." *Id.* Indeed, "[o]ne of the more important aims of the act was to secure to the injured employee compensation by direct payments under certain fixed rules without a lawsuit and without friction by a procedure at once simple and inexpensive." *McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 725 (1999) (quotation, brackets and ellipses omitted). The primary focus was, and is, to address the employee's loss of earning power regardless of legal fault, thereby protecting the employee and any dependents who actually relied upon the now lost wages. *See id.; Tarr v. Republic Corp.*, 116 N.H. 99, 101-02 (1976). Thus,

> [i]n place of the common law remedies, the workers' compensation law creates a balance of benefits and limitations

between the employer and employee. In return for limited compensation, the employee or the estate of the employee no longer bears the cost of litigation, delays and uncertainty. While the employer must assume the risk of employees' injuries without the benefit of common law defenses, the workers' compensation law limits the extent of liability.

*Thone*, 130 N.H. at 706; *see also* RSA 281-A:8.

■ The government's interest in creating the workers' compensation system is well-documented in our case law. We have no doubt that this is an important government interest. Limiting the benefits provided to decedent employees who leave no dependents is simply an extension of the government's important interest in providing benefits when an employee's earning power is diminished or lost due to a workplace injury. Therefore, we conclude that the death benefit provision, within the rubric of the entire workers' compensation scheme, is based upon an important government interest.

We next consider whether the means employed by the legislature to achieve this interest is "substantially related" to it. In making this inquiry, we do not solely compare the limited nature of the death benefit to the recovery available under the wrongful death statute. Rather, we review the relationship between the death benefit provision and the important government interest in the context of the comprehensive rubric of benefits created by the Workers' Compensation Law.

Employees have a full panoply of benefits available under the Workers' Compensation Law, whether the employee is temporarily or permanently injured, partially or completely disabled, or even killed as a result of a workplace incident. The act, however, was not designed or intended to provide tort-like damages or compensation for a legal wrong. *See McKay*, 143 N.H. at 727. "Unlike tort actions, no damages or compensation are awarded under the act for pain and suffering, disfigurement as such, loss of consortium, and other elements of common law damages." *Id.* (quotation and brackets omitted). Rather, the act

essentially provides two types of benefits, disability benefits and permanent impairment awards. Disability benefits compensate an injured worker for medical care and lost wages, while permanent impairment awards, otherwise known as scheduled awards, compensate an injured worker for the permanent impairment or loss of use of one or more body parts listed [in the statute.]

*Abbott,* 139 N.H. at 414. The expansive range of benefits includes in part: vocational rehabilitation services, *see* RSA 281-A:25 (Supp. 2007); job reinstatement, *see* RSA 281-A:25-a (1999); entitlement to civil penalties for delayed compensation, *see* RSA 281-A:42, :43 (Supp. 2007); mandatory award of attorney's fees, *see* RSA 281-A:44 (Supp. 2007); wage benefits, *see* RSA 281-A:28-:31 (1999); and medical care, *see* RSA 281-A:23 (Supp. 2007). In the event of death, the act provides compensation for the decedent's dependents until certain disqualifying events occur, such as the surviving spouse remarrying or children reaching the age of majority, *see* RSA 281-A:26, II, VI (1999).

By contrast, an estate in a wrongful death action seeks to recover tort-like damages. Under RSA 556:12, I (2007):

> If the administrator of the deceased party is plaintiff, and the death of such party was caused by the injury complained of in the action, *the mental and physical pain suffered by the deceased in consequence of the injury, the reasonable expenses occasioned to the estate by the injury, the probable duration of life but for the injury, and the capacity to earn money during the deceased party's probable working life,* may be considered as elements of damage in connection with other elements allowed by law, in the same manner as if the deceased had survived.

(Emphasis added.) Wrongful death damages address the injury to the person and to the estate of the deceased. *Tarr,* 116 N.H. at 103; *see also Marcotte v. Timberlane/Hampstead School Dist.,* 143 N.H. 331, 345 (1999) (damages for loss of life recoverable in wrongful death action). Damages available in such an action are similar to compensatory damages in which the underlying purpose is "to make the plaintiff whole again," *Bennett v. Lembo,* 145 N.H. 276, 280 (2000), restoring the person wronged "as nearly as possible to the position he would have been in if the wrong had not been committed," *Smith v. Cote,* 128 N.H. 231, 243 (1986). Though we do not decide whether wrongful death and common law compensatory damages are identical for all purposes, the analogy is sufficiently apt to distinguish the design and scope of damages available in a wrongful death action from compensation available to injured employees.

By enacting the Workers' Compensation Law, the legislature sought to balance the competing needs of employers and employees, address the injured employee's lost earning power and protect those who depended upon the employee's lost wages. This balance necessarily required the legislature to make choices which, when isolated in particular situations, burden some while benefiting others. A decedent employee who leaves no dependents can no more except himself from the consequences of this

legislative balance than can an employee who is permanently disabled by a work-related incident. Necessarily, the recovery available to each under the Workers' Compensation Law is limited when compared to the recovery available at common law or under statutes like the wrongful death statute. This was part of the balance struck by the legislature when it enacted the Workers' Compensation Law. The Workers' Compensation Law's failure to provide benefits to the estate of a dependentless decedent for the decedent's lost wages is in keeping with the purpose of the comprehensive scheme to protect those who were dependent upon an employee's wages, which were diminished or lost due to a workplace injury.

We conclude that to the extent that the exclusivity of the death benefit provision under the Workers' Compensation Law treats the estates of dependentless decedents who are killed at work differently from the estates of dependentless decedents who are killed outside of work, this different treatment is substantially related to an important government objective. Therefore, the death benefit provision does not violate the equal protection guarantee of our State Constitution.

In summary, we overrule our holding in *Park*, 121 N.H. 894, and declare that the exclusivity of the death benefit provision of the Workers' Compensation Law does not offend the equal protection guarantee of our State Constitution. Accordingly, we reverse the trial court's denial of NGS' motion to dismiss and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.