NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2019-0206

UNION LEADER CORPORATION & a.

v.

TOWN OF SALEM

Argued: November 20, 2019
Opinion Issued: May 29, 2020

Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Gregory V. Sullivan on the brief and orally), and Douglas, Leonard & Garvey, P.C., of Concord (Charles G. Douglas, III on the brief), for plaintiff Union Leader Corporation.

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Mr. Bissonnette orally), and Richard J. Lehmann, of Manchester, on the brief, for plaintiff American Civil Liberties Union of New Hampshire.

Upton & Hatfield, LLP, of Concord (Barton L. Mayer and Nathan C. Midolo on the brief, and Mr. Mayer orally), for the defendant.

Nolan Perroni, PC, of North Chelmsford, Massachusetts (Peter J. Perroni on the brief and orally), for the intervenor, New England Police Benevolent Association, Local 220.

New Hampshire Municipal Association, of Concord (Cordell A. Johnston, Stephen C. Buckley, and Natch Greyes on the brief), as amicus curiae.

HICKS, J.  The plaintiffs, Union Leader Corporation and American Civil Liberties Union of New Hampshire (ACLU-NH), appeal an order of the Superior Court (Schulman, J.) denying their petition for the release of "complete, unredacted copies" of: (1) "the 120-page audit report of the Salem Police Department . . . dated October 12, 2018 focusing on internal affairs complaint investigations"; (2) "the 15-page addendum focused on the [Salem Police] Department's culture"; and (3) "the 42-page audit report of the [Salem Police] Department dated September 19, 2018 focusing on time and attendance practices."  Collectively, we refer to these documents as the "Audit Report." The trial court upheld many of the redactions made to the Audit Report by the defendant, the Town of Salem (Town), concluding that they were required by the "internal personnel practices" exemption to the Right-to-Know Law, RSA chapter 91-A, as interpreted in Union Leader Corp. v. Fenniman, 136 N.H. 624 (1993), and its progeny.  See RSA 91-A:5, IV (2013).

In a separate opinion issued today, we overruled Fenniman to the extent that it broadly interpreted the "internal personnel practices" exemption and overruled our prior decisions to the extent that they relied on that broad interpretation.  See Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. ___, ___ (decided May 29, 2020) (slip op. at 9).  We now overrule Fenniman to the extent that it decided that records related to "internal personnel practices" are categorically exempt from disclosure under the Right-to-Know Law instead of being subject to a balancing test to determine whether such materials are exempt from disclosure.  We overrule our prior decisions to the extent that they applied the per se rule established in Fenniman.  We vacate the trial court's order and remand for further proceedings consistent with this opinion.

I.  Facts

The trial court recited the following relevant facts.  The Audit Report was prepared by a nationally-recognized consulting firm, which had been retained by the Town's outside counsel at the Town's request.  The Audit Report is highly critical of the Town's police department.

The Town publicly released a copy of the Audit Report, but redacted certain information pursuant to two exemptions to the New Hampshire Right-

2

to-Know Law: (1) the "internal personnel practices" exemption; and (2) the exemption for "personnel . . . and other files." RSA 91-A:5, IV. The plaintiffs brought the instant action to obtain an unredacted copy of the Audit Report. On appeal, they challenge the trial court's decision only to the extent that it sustained the redactions made under the "internal personnel practices" exemption. They do not challenge the trial court's decision to sustain redactions under the "personnel . . . and other files" exemption.

The trial court reviewed the unredacted Audit Report in camera and compared it, line by line, to the redacted version released to the public. Although critical of our decision in Fenniman, the trial court properly considered itself bound by it. Applying Fenniman, the trial court upheld the following redactions pursuant to the "internal personnel practices" exemption: (1) information to protect the identity of participants in particular internal affairs investigations (names of the accused officer(s) and/or the investigator(s), dates of investigations, specific locations, other facts that could be used to identify a participant officer, investigator, or witness, and dates of alleged misconduct); (2) information relating to a particular employee's scheduling of outside details and time off; (3) the manner by which an employee arranged for vacation leave and other time off from work; and (4) the names of employees who were paid for outside details during hours for which they were also receiving regular pay.

The trial court did not apply a balancing test to determine whether the redacted material should be disclosed, but rather, based upon Fenniman, ruled that the redacted material was categorically exempt from disclosure. Nonetheless, the court observed that "[a] balance of the public interest in disclosure against the legitimate privacy interests of the individual officers and higher-ups strongly favors disclosure of all but small and isolated portions of the Internal Affairs Practices section of the audit report."

The trial court ordered the Town to provide the plaintiffs with a copy of the Audit Report containing only the redactions it upheld. The Town complied with the trial court's order on April 26, 2019, shortly after the instant appeal was filed.

II. Discussion

On appeal, the plaintiffs urge us to overrule Fenniman. Alternatively, they argue that the Audit Report, in its entirety, does not relate to "internal personnel practices" even under Fenniman, and that Part I, Article 8 of the State Constitution requires that we employ a balancing test, rather than a per se rule, to determine whether records relating to "internal personnel practices" are exempt from disclosure. Finally, the plaintiffs contend that applying a balancing test to the redacted information favors the information's disclosure. Because we decide this case on statutory grounds, we do not reach the

3

plaintiffs' constitutional argument.  See Chatman v. Strafford County, 163 N.H. 320, 322 (2012) (explaining that "we decide cases on constitutional grounds only when necessary").[1]

### A.  Standard of Review

When interpreting the Right-to-Know Law, we apply our ordinary rules of statutory interpretation.  Union Leader Corp. v. City of Nashua, 141 N.H. 473, 475 (1996).  Accordingly, we look to the plain meaning of the words used.  Id. "To advance the purposes of the Right-to-Know Law, we construe provisions favoring disclosure broadly and exemptions narrowly."  Id. (quotation omitted).

### B.  Fenniman and Stare Decisis

At issue is the interpretation of RSA 91-A:5, IV, which exempts from disclosure under the Right-to-Know Law

> [r]ecords pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute invasion of privacy.

RSA 91-A:5, IV (emphasis added).  Fenniman was the first case to interpret the exemption for "internal personnel practices."  In that case, the plaintiff sought "memoranda and other records compiled" during a police department's internal investigation of a department lieutenant who had been accused of making harassing phone calls.  Fenniman, 136 N.H. at 625, 626.  We broadly construed the "internal personnel practices" exemption to apply to those records because "they document[ed] procedures leading up to internal personnel discipline, a quintessential example of an internal personnel practice."  Id. at 626 (quotation omitted).  In addition, we adopted a per se rule exempting such materials from disclosure.  Id. at 627.  We explained, "Although we have often applied a balancing test to judge whether the benefits of nondisclosure outweigh the benefits of disclosure, such an analysis is inappropriate where, as here, the legislature has plainly made its own determination that certain documents are categorically exempt."  Id. (citations omitted).

---

[1] To the extent that the plaintiffs argue that the Audit Report, as a whole, does not meet the broad definition of "internal personnel practices" that we adopted in Fenniman, we conclude that that issue is not properly before us.  The trial court did not rule that the Audit Report, in its entirety, was exempt from disclosure under the "internal personnel practices" exemption.  Rather, because the Town had released a redacted version of the report, the trial court looked at each redaction in light of what the Town had already disclosed.

In <u>Reid v. New Hampshire Attorney General</u>, 169 N.H. 509 (2016), we criticized <u>Fenniman</u>, but did not decide whether to overrule it because we were not asked to do so. See <u>Reid</u>, 169 N.H. at 519-22. In <u>Reid</u>, we observed that, in <u>Fenniman</u>, we had failed to interpret the "internal personnel practices" exemption narrowly and had adopted a <u>per se</u> rule of exemption, which departed from our customary Right-to-Know Law jurisprudence under which a balancing test applies. <u>Id.</u> at 519-20; see <u>Lambert v. Belknap County Convention</u>, 157 N.H. 375, 382-86 (2008) (describing the balancing test used to determine whether public records are exempt from disclosure because their release would constitute an invasion of privacy). We also observed that, in <u>Fenniman</u>, we "did not interpret the portion of RSA 91-A:5, IV at issue in the context of the remainder of the statutory language—in particular, the language exempting 'personnel . . . and other files.'" <u>Reid</u>, 169 N.H. at 520. We further observed that, in <u>Fenniman</u>, we had failed to consult decisions from other jurisdictions, particularly federal courts interpreting "Exemption 2" under the federal Freedom of Information Act (FOIA). <u>Id.</u> at 520-21; see 5 U.S.C. § 552(b)(2) (2018) (exempting from disclosure under FOIA information "related solely to the internal personnel rules and practices of an agency"). Nonetheless, we declined to reconsider <u>Fenniman</u> <u>sua</u> <u>sponte</u>. <u>Reid</u>, 169 N.H. at 522.

<u>Seacoast Newspapers</u> represented our first opportunity to consider whether to overrule <u>Fenniman</u>. See <u>Seacoast Newspapers</u>, 173 N.H. at ___ (slip op. at 5). There, after applying our established stare decisis factors, we overruled <u>Fenniman</u> to the extent that it had too broadly defined what constitutes records related to "internal personnel practices." <u>Id.</u> at ___ (slip op. at 9). We concluded that the "internal personnel practices" exemption applies narrowly to records relating to the "internal rules and practices governing an agency's operations and employee relations," and does not apply to "information concerning the history or performance of a particular employee." <u>Id.</u> at ___ (slip op. at 11).

Because we concluded in <u>Seacoast Newspapers</u> that the arbitration decision at issue did not meet the narrow definition of records relating to "internal personnel practices" adopted in that case, we did not "decide . . . whether <u>Fenniman</u> should also be overruled to the extent that it applied a <u>per se</u> rule, as opposed to a balancing test, prohibiting the disclosure of records that fall under the 'internal personnel practices' exemption." <u>Seacoast Newspapers</u>, 173 N.H. at ___ (slip op. at 10). We face that issue here.

"We do not lightly overrule a case that has been precedent for over twenty-five years." <u>Alonzi v. Northeast Generation Servs. Co.</u>, 156 N.H. 656, 659 (2008). "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with

5

arbitrary and unpredictable results." Id. at 659-60 (quotation omitted). "When asked to overrule a prior holding, we do not look at the issues de novo; rather, we review whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." Id. at 660 (quotation omitted).

Several factors inform our judgment, including:

(1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

Id. (quotation omitted). No single factor is dispositive "because the doctrine of stare decisis is not one to be either rigidly applied or blindly followed." Ford v. N.H. Dep't of Transp., 163 N.H. 284, 290 (2012).

The first stare decisis factor "examines whether a rule has become difficult or impractical for trial courts to apply." State v. Cora, 170 N.H 186, 192 (2017) (quotation omitted). "The first factor weighs against overruling when a rule is easy to apply and understand." Id. (quotation omitted). The per se rule, exempting from disclosure all material that falls within the "internal personnel practices" exemption, is simple to apply and understand. Thus, the first stare decisis factor weighs against overruling Fenniman's adoption of a per se rule. See State v. Balch, 167 N.H. 329, 335 (2015) (deciding that a rule that "is a simple rule to apply and understand . . . has retained its practicality and simplicity").

For the second factor "we inquire into 'the cost of a rule's repudiation as it would fall on those who have relied reasonably on the rule's continued application.'" State v. Duran, 158 N.H. 146, 157 (2008) (quoting Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 855 (1992)). Reliance interests are most often implicated when a rule operates "'within the commercial law context, where advance planning of great precision is most obviously a necessity.'" Id. (quoting Casey, 505 U.S. at 856). No such interests are implicated by overruling the Fenniman per se rule. See Seacoast Newspapers, 173 N.H. at ___ (slip op. at 6). The Town's assertions to the contrary do not persuade us that the Fenniman per se rule "is subject to a kind of reliance that would lend a special hardship to the consequence of overruling" it. Alonzi, 156 N.H. at 660 (quotation omitted); see State v. Quintero, 162 N.H. 526, 538 (2011).

We consider the third and fourth factors together. "The third factor concerns whether the law has developed in such a manner as to undercut the

6

prior rule." Balch, 167 N.H. at 335; see State v. Matthews, 157 N.H. 415, 419-20 (2008) (overruling prior holdings due to evolution of our case law). The fourth factor concerns "whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." Ford, 163 N.H. at 290. "'[We] are sometimes able to perceive significant facts or understand principles of law that eluded our predecessor and justify departures from existing decisions.'" Duran, 158 N.H. at 154 (quoting Casey, 505 U.S. at 866) (brackets omitted).

After considering the third and fourth factors, "[w]e believe there are principles of law the [Fenniman] court did not consider." Duran, 158 N.H. at 154; see Reid, 169 N.H. at 520-21; Seacoast Newspapers, 173 N.H. at ___ (slip op. at 7). We conclude that "departure from [Fenniman] is justified because the [court] failed to give full consideration" to: (1) our prior case law interpreting RSA 91-A:5, IV and pertinent legislative history; and (2) whether applying a per se rule to "internal personnel practices," but not to other categories of information identified in RSA 91-A:5, IV, would nullify those other categories. Duran, 158 N.H. at 154; see Reid, 169 N.H. at 520-21; Seacoast Newspapers, 173 N.H. at ___ (slip op. at 6-8). "[W]e owe somewhat less deference to a decision that was rendered without benefit of a full airing of all the relevant considerations." Duran, 158 N.H. at 155 (quotation omitted).

First, Fenniman failed to give full consideration to our prior cases interpreting RSA 91-A:5, IV and to relevant legislative history. Before Fenniman was decided, we had consistently applied a balancing test to the disclosure of records pertaining to "confidential" and "financial information." See Chambers v. Gregg, 135 N.H. 478, 481 (1992); Menge v. Manchester, 113 N.H. 533, 537-38 (1973); Mans v. Lebanon School Bd., 112 N.H. 160, 162-64 (1972).

We first adopted the balancing test in Mans. See Mans, 112 N.H. at 162. In that case, the issue was whether a Lebanon resident was entitled to "access to the name and salary of each schoolteacher in the Lebanon School District." Id. at 161. At the time, RSA 91-A:5, IV exempted from disclosure "[r]ecords pertaining to internal personnel practices, confidential, commercial, or financial information, personnel, medical, welfare, and other files whose disclosure would constitute invasion of privacy." Id. (quotation omitted). We explained that RSA 91-A:5, IV "means that financial information and personnel files and other information necessary to an individual's privacy need not be disclosed." Id. at 162. In other words, we interpreted the phrase "whose disclosure would constitute invasion of privacy," as modifying all of the kinds of information identified in RSA 91-A:5, IV, including that "pertaining to internal personnel practices." Id. We concluded that the phrase "whose disclosure would constitute invasion of privacy" and the need to interpret exemptions to the Right-to-Know Law narrowly so as to serve the law's purposes and objectives, required balancing "the benefits of disclosure to the public . . .

7

against the benefits of nondisclosure to the administration of the school system and to the teachers." Id.; see Perras v. Clements, 127 N.H. 603, 605 (1986) (explaining that in Mans we established "a balancing test in 'right-to-know' cases to determine whether the benefits of disclosure outweigh the benefits of nondisclosure"); Menge, 113 N.H. at 534, 537-38 (applying the balancing test we adopted in Mans to "a computerized tape of certain field record cards compiled by the city of Manchester for use in arriving at its real estate tax assessments").

Nevertheless, in Fenniman, we eschewed the balancing test we had applied to the disclosure of "confidential" and "financial" information in favor of a per se rule of exemption for records pertaining to "internal personnel practices" because, we said, "the legislature [had] plainly made its own determination that [internal personnel practices] documents are categorically exempt." Fenniman, 136 N.H. at 627. In fact, there was nothing in the plain language of RSA 91-A:5, IV demonstrating legislative intent to treat records pertaining to "internal personnel practices" differently from "confidential, commercial, or financial information." RSA 91-A:5, IV (Supp. 1992).

The Town bases its argument that Fenniman is consistent with the plain language of RSA 91-A:5, IV upon the fact that semicolons separate the types of information listed therein. The Town contends that the semicolons indicate that the phrase "whose disclosure would constitute invasion of privacy" applies only to the last clause of the statute ("personnel . . . and other files"). See Teeboom v. City of Nashua, 172 N.H. 301, 316 (2019) (explaining that, under ordinary grammar rules, a modifying clause should be placed next to the clause it modifies); In re Richard M., 127 N.H. 12, 17 (1985) (observing that "the legislature is not compelled to follow technical rules of grammar and composition" (quotation omitted)).

However, our case law has consistently applied the balancing test to the disclosure of "confidential, commercial, or financial information," even after semicolons were added in 1986. See Laws 1986, 83:6; see also Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 707 (2010); Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 555-56 (2002); Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 552, 555-59 (1997); Chambers, 135 N.H. at 481; Brent v. Paquette, 132 N.H. 415, 426-28 (1989). Indeed, we have construed the fact that "confidential, commercial, or financial information" is separate from the other categories of information enumerated in RSA 91-A:5, IV as meaning "not that the information is per se exempt, but rather that it is sufficiently private that it must be balanced against the public's interest in disclosure." N.H. Housing Fin. Auth., 142 N.H. at 553. Further, the history of the 1986 amendment to RSA 91-A:5, IV does not demonstrate that the legislature intended the semicolons to limit the balancing test established in Mans to the last clause of the statute ("personnel . . . and other files").

8

To the extent that the Town argues that we apply the balancing test to the disclosure of confidential information only to determine whether the material is "confidential," the Town is mistaken. See Chambers, 135 N.H. at 481. We do not have a single test to determine whether material is "confidential," although we have found "instructive the standard test employed by the federal courts." N.H. Housing Fin. Auth., 142 N.H. at 554. To establish that information is sufficiently "confidential" to justify nondisclosure, the party resisting disclosure must prove that disclosure "is likely: (1) to impair the [government]'s ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." Id. at 554 (quotation omitted).

The test described above is not the balancing test that we use to determine whether the disclosure of "confidential, commercial, or financial" information results in an invasion of privacy. That determination involves a three-step analysis. Prof'l Firefighters of N.H., 159 N.H. at 707. First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. Id. Second, we assess the public's interest in disclosure. Id. Third, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. Id. If no privacy interest is at stake, then the Right-to-Know Law mandates disclosure. Id. Further, "whether information is exempt from disclosure because it is private is judged by an objective standard and not a party's subjective expectations." Id. (quotation and brackets omitted). Thus, determining whether the exemption for "confidential, commercial, or financial information" applies "require[s] analysis of both whether the information sought is 'confidential, commercial, or financial information,' and whether disclosure would constitute an invasion of privacy." N.H. Housing Fin. Auth., 142 N.H. at 552.

Fenniman simply cannot be reconciled with our case law construing the exemption for "confidential, commercial, or financial information." Nor can it be reconciled with the history of the 1986 amendment to RSA 91-A:5, IV and the plain meaning of the statutory language, neither of which provides a basis to apply a balancing test to the disclosure of "confidential, commercial, or financial information" but not to apply the same test to the disclosure of records related to "internal personnel practices."

Second, in Fenniman, we failed to consider whether adopting a per se rule of exemption for "internal personnel practices," while applying a balancing test to the exemption for "personnel . . . and other files," would render the latter a nullity. We conclude that it does. As ACLU-NH observes, "This is because . . . a government agency could skirt the public interest balancing analysis required for 'personnel file' information by simply asserting the categorical 'internal personnel practices' exemption, thus leaving the 'personnel file' exemption without effect." Cf. Shapiro v. U.S. Dept. of Justice, 153 F.

9

Supp. 3d 253, 280 (D.D.C. 2016) (noting that Exemption 6 under FOIA for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal [privacy] . . . would have little purpose if agencies could simply invoke Exemption 2," which shields, inter alia, records relating solely to the internal personnel rules and practices of an agency).

Because the Fenniman per se rule is inconsistent with our historical and current interpretation of the exemption under RSA 91-A:5, IV for "confidential, commercial, or financial information," we are persuaded that it has become no more than a remnant of abandoned doctrine. See Matthews, 157 N.H. at 420. We, therefore, overrule Fenniman to the extent that it adopted a per se rule of exemption for records relating to "internal personnel practices."

In arguing for a contrary result, the Town and the intervenor, New England Police Benevolent Association, Local 220 (the Union), raise arguments that were raised and rejected in Seacoast Newspapers. See Seacoast Newspapers, 173 N.H. at ___ (slip op. at 9). For instance, the Town and Union argue that we should adhere to the per se rule we adopted in Fenniman because the legislature has not "overruled" Fenniman by legislative enactment. See Appeal of Phillips, 165 N.H. 226, 232 (2013) (assuming that our prior holding "conforms to legislative intent" when it had "been over four years since we issued our [prior] decision and the legislature [had] not seen fit to amend the statute"); cf. New Hampshire Retail Grocers Ass'n v. State Tax Comm'n, 113 N.H. 511, 514 (1973) (noting that "[i]t is a well-established principle of statutory construction that a longstanding practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to legislative intent"). However, such canons of statutory construction are not controlling. See Chagnon v. Union Leader Corp., 104 N.H. 472, 474 (1963), superseded on other grounds by statute as stated in Hanchett v. Brezner Tanning Co., 107 N.H. 236 (1966) (explaining that legislative "intent, rather than any arbitrary canons of statutory construction, is controlling"). Moreover, as we explained in Seacoast Newspapers, "We are unwilling to mechanically apply the principles of stare decisis to allow a decision that was wrong when it was decided to perpetuate as a rule of law." Seacoast Newspapers, 173 N.H. at ___ (slip op. at 9) (quotation omitted). "Neither will we always place on the shoulders of the legislature the burden to correct our own error." Id. at ___ (slip op. at 9) (quotation omitted).

Similarly, the Union argues in this case, as it argued in Seacoast Newspapers, that we should decline to overrule Fenniman because of legislative activity during the last legislative session. Id. at ____ (slip op. at 9). As we explained in Seacoast Newspapers, "we will not be deterred . . . from correcting a wrong of our own creation because the legislature considered, but did not

enact, a bill relating to the same subject matter in a previous legislative session." Id. at ___ (slip op. at 9).

Thus, for all of the above reasons, we now overrule Fenniman to the extent that it adopted a per se rule of exemption for records relating to "internal personnel practices" and overrule its progeny to the extent that they applied that per se rule of exemption. In the future, the balancing test we have used for the other categories of records listed in RSA 91-A:5, IV shall apply to records relating to "internal personnel practices." See Prof'l Firefighters of N.H., 159 N.H. at 707 (setting forth the three-step analysis required to determine whether disclosure will result in an invasion of privacy). Determining whether the exemption for records relating to "internal personnel practices" applies will require analyzing both whether the records relate to such practices and whether their disclosure would constitute an invasion of privacy. See N.H. Housing Fin. Auth., 142 N.H. at 552.

Not surprisingly, the plaintiffs contend that, when the balancing test is applied to the redactions the trial court upheld, it favors disclosure, and the Town argues the opposite. However, we agree with the Union that remand is required in this case not only for the trial court to apply the balancing test in the first instance, but for it also to decide whether information in the redactions it upheld satisfies Seacoast Newspapers definition of "internal personnel practices." To the extent that the trial court finds that a redaction does not meet that narrow definition, it may, on remand, determine whether the redacted information, nonetheless, is exempt from disclosure under the exemption for "personnel . . . and other files." RSA 91-A:5, IV. This is so because, as the Union correctly observes, "it is not evident that the [trial] court considered whether any of the disputed materials were exempt 'personnel . . . files.'"

Vacated and remanded.


BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., dissented.

HANTZ MARCONI, J., dissenting. In another opinion issued today, the court overruled our decision in Union Leader Corp v. Fenniman, 136 N.H. 624 (1993), to the extent that it too broadly interpreted the "internal personnel practices" exemption to the Right-to-Know Law. See Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. ___, ___ (decided May 29, 2020) (slip op. at 11); see also RSA 91-A:5, IV (2013). I concurred in the result in that case because I agreed with my colleagues that the arbitration decision at issue does not fall within the "internal personnel practices" exemption to the Right-to-Know Law. See Seacoast Newspapers, 173 N.H. at ___ (Hantz Marconi, J., concurring in part and dissenting in part) (slip op. at 16). I saw no need to consider whether to overrule Fenniman in that case because I believed that the arbitration

decision fails to satisfy the <u>Fenniman</u> definition of records pertaining to "internal personnel practices" as a matter of law. <u>Id</u>. (slip op. at 16).

In the instant case, my colleagues overrule <u>Fenniman</u> to the extent that it decided that records pertaining to "internal personnel practices" are categorically exempt from disclosure under the Right-to-Know Law. For the reasons that follow, I respectfully dissent from my colleagues' decision to overrule <u>Fenniman</u> in any respect.

"The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." <u>Jacobs v. Director, N.H. Div. of Motor Vehicles</u>, 149 N.H. 502, 504 (2003) (quotations omitted). "[W]hen asked to reconsider a holding, the question is not whether we would decide the issue differently <u>de novo</u>, but whether the ruling has 'come to be seen so clearly as error that its enforcement was for that very reason doomed.'" <u>Id</u>. (quoting <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 854 (1992)). Several factors inform our judgment, including: (1) "whether the rule has proven to be intolerable simply in defying practical workability"; (2) "whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling"; (3) "whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine"; and (4) "whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." <u>Id</u>. at 505 (quotations omitted).

Unlike my colleagues, I believe that our established stare decisis factors compel retaining <u>Fenniman</u>. As the majority concedes, the first factor weighs in favor of retaining <u>Fenniman</u> because the <u>Fenniman</u> decision is easy to apply. <u>See</u> <u>State v. Cora</u>, 170 N.H. 186, 192 (2017). As the Town asserts, Fenniman "has been applied on numerous occasions in a rational and meaningful way," and, thus, "there is no basis for arguing" that <u>Fenniman</u> "defies practical workability."

I also believe that the second factor weighs in favor of retaining <u>Fenniman</u>. The second factor concerns "the cost of a rule's repudiation as it would fall on those who have relied reasonably on the rule's continued application." <u>Casey</u>, 505 U.S. at 855. As the Town correctly observes, "Thousands of employees at every level of government, retired and currently employed, have come to rely on <u>Fenniman,</u> which has been the law for 26 years." Moreover, governmental administrators also have come to understand that their efforts to investigate, evaluate, and improve operations are protected by <u>Fenniman</u>. <u>See</u> <u>id</u>. at 856 (explaining that "while the effect of reliance on [a prior Supreme Court decision] cannot be exactly measured, neither can the

12

certain cost of overruling [that decision] for people who have ordered their thinking and living around that case be dismissed").

Although the majority cites factors three and four and claims to have applied them, its actual analysis reveals that it overrules Fenniman merely because it finds the case to have been badly reasoned. See State v Quintero, 162 N.H. 526, 544 n.1 (2011) (Lynn, J., specially concurring) (describing the court's analysis in State v. Duran, 158 N.H. 146 (2008)). That this is so is demonstrated by the following passages, among others, from the decision: "[W]e are sometimes able to perceive significant facts or understand principles of law that eluded our predecessor and justify departures from existing decisions"; "We believe there are principles of law the [Fenniman] court did not consider"; "We conclude that departure from [Fenniman] is justified because the [court] failed to give full consideration" to our prior case law and to the fact that we apply a balancing test to the disclosure of other information covered by RSA 91-A:5, IV; "[W]e owe somewhat less deference to a decision that was rendered without benefit of a full airing of all the relevant considerations"; and "We are unwilling to mechanically apply the principles of stare decisis to allow a decision that was wrong when it was decided perpetuate as a rule of law." (Quotations omitted.). See id. (referring to the same or similar passages in Duran). When considering whether to overrule a case, we should not consider whether we would have decided it differently de novo. Jacobs, 149 N.H. at 504. Yet, that is precisely what my colleagues have done.

Moreover, in my view, Fenniman was soundly reasoned. Fenniman concerned a petition by Union Leader Corporation for access to documents compiled during an internal investigation of a police lieutenant accused of making harassing phone calls. Fenniman, 136 N.H. at 625. The police department released information including the lieutenant's name and the results of the investigation, but withheld "memoranda and other records compiled during the investigation." Id. at 625-26. We held that the withheld records pertained to "internal personnel practices" because "they document procedures leading up to internal personnel discipline, a quintessential example of an internal personnel practice." Id. at 626 (quotation omitted). We also decided that the balancing test we had applied "to judge whether the benefits of nondisclosure outweigh the benefits of disclosure" was "inappropriate where, as here, the legislature has plainly made its own determination that certain documents are categorically exempt" from disclosure under the Right-to-Know Law. Id. at 627.

Fenniman is consistent with the plain meaning of the language in RSA 91-A:5, IV. When Fenniman was decided, RSA 91-A:5, IV exempted:

> Records pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing

13

examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute an invasion of privacy. Without otherwise compromising the confidentiality of the files, nothing in this paragraph shall prohibit a body or agency from releasing information relative to health or safety from investigative files on a limited basis to persons whose health or safety may be affected.

RSA 91-A:5, IV (Supp. 1992).

Pursuant to the plain meaning of the statutory language, the clause "whose disclosure would constitute invasion of privacy" modifies only the last category of records enumerated in the statute ("personnel, medical, welfare, library user, videotape sale or rental, and other files"). See Teeboom v. City of Nashua, 172 N.H. 301, 316 (2019) (explaining that, under ordinary grammar rules, a modifying clause should be placed next to the clause it modifies); In re Richard M., 127 N.H. 12, 17 (1985) ("Although the legislature is not compelled to follow technical rules of grammar and composition, a widely accepted method of statutory construction is to read and examine the text of the statute and draw inferences concerning its meaning from its composition and structure." (quotation omitted)). As the amicus correctly observes:

> This is most apparent with respect to "test questions, scoring keys, and other examination data." It is impossible to imagine how disclosure of test questions or scoring keys could constitute invasion of privacy, so applying the invasion-of-privacy balancing test would render this exemption meaningless—and yet the exemption is there. Clearly the reason for exempting these records is to prevent someone who expects to be taking an academic, licensing, or employment examination from gaining an unfair advantage—it has nothing to do with personal privacy.
>
> If the invasion-of-privacy element does not apply to the test scores exemption, there is no reason, consistent with the construction of the paragraph, to apply it [to] the other categories, either.

Although the majority makes much of the fact that we have applied our traditional balancing test to "confidential, commercial, or financial" information, I agree with the amicus that doing so makes sense because "[p]rivacy and confidentiality, while not exactly the same thing, are certainly related." See Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 553-54 (1997) (providing that under one test, to establish that "commercial" or "financial" information is sufficiently "confidential" to justify nondisclosure, the party resisting disclosure must prove that disclosure "is likely: (1) to impair the

[government]'s ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained" (quotation omitted)).  Moreover, although the Fenniman Court did not consider federal precedent, doing so is not required when interpreting our Right-to-Know Law for we are the final arbiter of the legislature's intent.  Clay v. City of Dover, 169 N.H. 681, 685 (2017).

Even if I were to agree with my colleagues that Fenniman is poorly reasoned, which I do not, "[p]rincipled application of stare decisis requires a court to adhere even to poorly reasoned precedent in the absence of some special reason over and above the belief that a prior case was wrongly decided." Ford v. N.H. Dep't of Transp., 163 N.H. 284, 290 (2012) (quotation omitted).  In other words, "[r]especting stare decisis means sticking to some wrong decisions."  Kimble v. Marvel Entm't, LLC, 135 S. Ct. 2401, 2409 (2015).  "The doctrine rests on the idea, as Justice Brandeis famously wrote, that it is usually 'more important that the applicable rule of law be settled than that it be settled right.'"  Id. (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)).  "Indeed, stare decisis has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up."  Id.  "Accordingly, an argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent."  Id.

"Judges are not at liberty to follow prior decisions that are well-reasoned and discard those that are not."  Quintero, 162 N.H. at 539.  "According substantial weight to the poor reasoning of an opinion undermines stare decisis and potentially bestows upon the court expansive authority to overrule any prior decision it determines is poorly reasoned."  Id. at 540.  "[W]hen governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results."  Jacobs, 149 N.H. at 504 (quotation omitted).

Stare decisis "is most compelling" when statutory interpretation is at issue.  Hilton v. South Carolina Public Railways Comm'n, 502 U.S. 197, 205 (1991).  This is so because the legislature "may alter what we have done by amending the statute."  Patterson v. McLean Credit Union, 491 U.S. 164, 175 n.1 (1989), superseded by statute on other grounds, as stated in Stender v. Lucky Stores, Inc., 780 F. Supp. 1302, 1305-06 (N.D. Cal. 1992); accord Duran, 158 N.H. at 157 ("[S]tare decisis generally has more force in statutory analysis than in constitutional adjudication because, in the former situation, the legislature can correct our mistakes through legislation." (quotations and brackets omitted)).  Toward that end, I find it persuasive that, although the legislature has amended the Right-to-Know Law on many occasions since Fenniman was decided, it has not seen fit to overrule Fenniman by legislative enactment.  See Appeal of Phillips, 165 N.H. 226, 232 (2013) (assuming that our prior holding "conforms to legislative intent" when it had "been over four

15

years since we issued our [prior] decision and the legislature [had] not seen fit to amend the statute").

For all of the above reasons, therefore, I would not overrule <u>Fenniman</u>.